PEOPLE v CEDRIC HAYDEN

PEOPLE v ABROM HAYDEN

PEOPLE v DICKERSON

Docket Nos. 61914, 62168, 62917. Submitted July 25, 1983, at Detroit. —Decided February 21, 1984. Leave to appeal applied for.

Following a joint jury trial Cedric Hayden was convicted of armed robbery, breaking and entering an occupied dwelling with intent to commit larceny, and felony-firearm, Eric Dickerson was convicted of the armed robbery and breaking and entering, and Abrom Hayden was convicted of the breaking and entering, Recorder's Court of Detroit, Lawrence D. Silverman, J. The principal evidence against the defendants consisted of the testimony of the victim, the testimony of an accomplice, and testimony regarding a subsequent attempted breaking and entering, admitted by the defendants and introduced as "similar acts" evidence. The defendants appealed separately, alleging various errors, and the appeals were consolidated. *Held:*

1. The attempted breaking and entering and the charged offense were not so similar or distinctive as to compel the conclusion that the same persons were responsible for each. The link between the crimes was a revolver, stolen in the charged robbery, which was found at the scene of the later offense. The testimony of the accomplice indicated that defendant Dickerson stole the revolver, thus the jury was properly allowed to consider Dickerson's involvement in the later offense as material to a determination of his guilt in the charged

REFERENCES FOR POINTS IN HEADNOTES

[1] 29 Am Jur 2d, Evidence §§ 320, 322.

[2] 4 Am Jur 2d, Appeal and Error §§ 517, 518.

[3] 50 Am Jur 2d, Larceny §§ 160-162.
    75 Am Jur 2d, Trial § 760.

[4] 75 Am Jur 2d, Trial § 845.

[5] 75 Am Jur 2d, Trial § 643.

[6] 41 Am Jur 2d, Indictments and Informations §§ 56, 60.

[7] 67 Am Jur 2d, Robbery § 4.

[8] 79 Am Jur 2d, Weapons and Firearms § 7.

[9] 5 Am Jur 2d, Appeal and Error § 746.

offense. This evidence was improperly introduced, however, to show the involvement of the defendants Hayden because there was no evidence to show their joint possession of the revolver with Dickerson.

2. The probative value of the "other acts" evidence was not outweighed by its prejudicial effect as to defendant Dickerson. Also, the trial court properly cautioned the jury as to the limited use to which the evidence was to be put.

3. The exclusion of the "other acts" evidence would not have altered a reasonable juror's opinion as to the guilt of Cedric Hayden, as he was identified by the victim. Furthermore, the trial court did not err in refusing to suppress evidence of the victim's line-up and in-court identifications of Cedric Hayden.

4. Admission of the "other acts" evidence against Abrom Hayden was impermissible and requires reversal of his conviction.

5. The trial court's instructions to the jury regarding the "other acts" evidence were not improper, nor did the court err in not including a portion of the Criminal Jury Instructions in its instruction on mixed direct and circumstantial evidence.

6. Certain questioning of Cedric Hayden regarding an unrelated crime does not require reversal. Defendants objected to the questioning and the court properly cautioned the jury.

7. The court did not err in *sua sponte* instructing the jury on the defendants' theories of the case.

8. The court did not abuse its discretion in allowing the indorsement of the accomplice witness after the final pretrial hearing.

9. Defendants' other common allegations of error are without merit.

10. Defendants Dickerson and Cedric Hayden alleged that the trial court's instructions on armed robbery require reversal. The jury was instructed that if these defendants were in actual possession of a weapon during the robbery they could be convicted of armed robbery even if the weapon was not used or seen by the victim. The instruction does not require reversal: the victim identified Cedric Hayden as the one who pointed a shotgun at him, and the accomplice testified that Dickerson was armed when he entered the victim's home.

11. An armed robbery may be proven without actual introduction of the weapon into evidence.

12. The court properly instructed the jury regarding alleged statements made by Cedric Hayden.

13. The evidence was sufficient to support the conviction of Abrom Hayden for breaking and entering.

14. Defendant Dickerson's allegation that he received ineffec-

tive assistance of counsel is rejected. The matter was previously decided when a motion to remand was denied "for lack of merit in the ground presented".

Affirmed as to defendants Dickerson and Cedric Hayden. Defendant Abrom Hayden's conviction is reversed and his case remanded.

1. CRIMINAL LAW — IDENTIFICATION OF DEFENDANT — PRIOR BAD ACTS — EVIDENCE.

The following requirements must be met before evidence of a defendant's prior similar bad acts may be introduced to prove identity: (1) there must be substantial evidence that the defendant actually perpetrated the prior bad act; (2) there must be some special quality or circumstance of the bad act tending to prove the defendant's identity or the motive, intent, absence of mistake or accident, scheme, plan, system, opportunity, preparation, or knowledge in doing the act; (3) one or more of these factors must be material to the determination of the defendant's guilt of the charged offense; and (4) the probative value of the evidence must not be outweighed by the danger of unfair prejudice.

2. CRIMINAL LAW — IDENTIFICATION OF DEFENDANT — SUPPRESSION OF EVIDENCE — APPEAL.

A trial court's ruling at a hearing to determine whether evidence of a defendant's identification should be suppressed will not be reversed by the Court of Appeals unless the ruling was clearly erroneous.

3. CRIMINAL LAW — POSSESSION OF STOLEN PROPERTY — INFERENCES — JURY INSTRUCTIONS.

A jury may infer that a defendant in possession of recently stolen property was the person who stole the property and a trial court's instruction to the jury in this regard is proper if the jury is informed that the inference need not be made (CJI 23:1:02).

4. CRIMINAL LAW — JURY INSTRUCTIONS — CIRCUMSTANTIAL EVIDENCE.

Additional instructions to the jury dealing with the use of circumstantial evidence are not required where a case does not depend entirely upon circumstantial evidence.

5. CRIMINAL LAW — JURY INSTRUCTIONS — THEORY OF THE CASE.

A trial court, having taken it upon itself to instruct the jury on

the defendant's theory of the case without a defense request for such an instruction, must present the theory accurately.

6. WITNESSES — INDORSEMENT OF WITNESSES — CRIMINAL LAW.

The statute requiring the indorsement of witnesses specifically allows for their late indorsement, even during trial; allowing such late indorsement is not an abuse of the trial judge's discretion where the judge adopts procedures to guarantee the defense adequate time to prepare and where the defendant is unable to show that his defense was prejudiced by the late indorsement (MCL 767.40; MSA 28.980).

7. ROBBERY — ARMED ROBBERY — EVIDENCE.

There are two alternative methods for proving an armed robbery: (1) proof beyond a reasonable doubt that the defendant, in committing the robbery, possessed a dangerous weapon, whether or not the weapon was actually seen by the victim, and (2) proof that the defendant used or fashioned an article in such a manner as to cause the victim to reasonably believe that a dangerous weapon could be used in the robbery (MCL 750.529; MSA 28.797).

8. CRIMINAL LAW — EVIDENCE — POSSESSION OF FIREARM.

The possession of a firearm by a defendant during the commission of a crime may be proven without the actual admission into evidence of the firearm.

9. APPEAL — LAW OF THE CASE — DENIAL OF MOTION.

A Court of Appeals panel is precluded by the doctrine of "the law of the case" from reaching the merits of an issue where an appellant's prior motion to remand based on the same issue was denied by another panel of the Court of Appeals "for lack of merit in the ground presented".

*Frank J. Kelley,* Attorney General, *Louis J. Caruso,* Solicitor General, *William L. Cahalan,* Prosecuting Attorney, *Edward Reilly Wilson,* Deputy Chief, Civil and Appeals, and *Kevin G. Simowski,* Assistant Prosecuting Attorney, for the people.

*Arthur James Rubiner,* for defendant Cedric Hayden on appeal.

*Kenneth E. Rosen,* for defendant Abrom Hayden on appeal.

State Appellate Defender (by *John Nussbaumer),* for defendant Dickerson on appeal.

Before: D. E. HOLBROOK, JR., P.J., and WAHLS and R. R. LAMB,* JJ.

. R. R. LAMB, J. Each of the defendants was charged with armed robbery, MCL 750.529; MSA 28.797, breaking and entering an occupied dwelling with the intent to commit larceny, MCL 750.110; MSA 28.305, and possession of a firearm during the commission of a felony, MCL 750.227b; MSA 28.424(2). Following a joint jury trial in the Detroit Recorder's Court, defendant Cedric Hayden was convicted of all charges, defendant Eric Dickerson was convicted of the armed robbery and the breaking and entering charges, and defendant Abrom Hayden was convicted only of breaking and entering.

Cedric Hayden was sentenced to serve concurrent prison terms of from 10 to 20 and 6 to 15 years respectively on the armed robbery and breaking and entering convictions. A two-year consecutive term of imprisonment was imposed for the felony-firearm conviction. Eric Dickerson was sentenced to serve concurrent terms of imprisonment of from 15 to 30 years (armed robbery) and 7 to 15 years (breaking and entering). Abrom Hayden was sentenced to serve a term of from 3 to 15 years imprisonment for his breaking and entering conviction.

All three defendants now appeal as of right. This Court, on its own motion, consolidated the three appeals in an order dated February 2, 1983.

The charges arose out of a criminal transaction occurring on March 24, 1981, at the residence of

---

* Circuit judge, sitting on the Court of Appeals by assignment.

Bernard Lafferty in Detroit. Lafferty testified that he was awakened at approximately 11:45 p.m. to find Cedric Hayden, partially masked, standing over his bed. Cedric pointed a sawed-off shotgun in Lafferty's face and demanded guns, money, and jewelry. A second man, whom Lafferty could not identify, stood behind Cedric. This man was armed. with a revolver. Lafferty said that he could hear other individuals rummaging through the house, and he heard one of the offenders say something like "look here Tyronne".

Lafferty's observance of the two men lasted for approximately fifteen seconds. One of the men then kicked him in the face, and Lafferty buried his head into a pillow. Before the perpetrators left the premises, they tied Lafferty's feet with an electrical cord and his hands with a belt.

After Lafferty heard the downstairs door close, he untied himself. He discovered that two television sets, a jewelry box containing $60 to $70 in coins, a "couple" of gold necklaces, and a revolver with serial number 707023 were missing. Lafferty's roommate, Bruce Allen, also reported various items missing, including a deer rifle, over $400, and jewelry.

Birk Stennis testified that he was convicted of armed robbery and possession of a firearm during the commission of a felony arising out of the Lafferty incident. Stennis was sentenced to 1 year, 1 day to 20 years imprisonment for the robbery and an additional two-year consecutive term was imposed for the felony-firearm conviction. The prosecution dismissed another case against Stennis involving a charge of breaking and entering and agreed not to bring charges against him in three other matters in which he was implicated. In exchange for this disposition of the various crimi-

nal matters in which he was involved, Stennis agreed to testify against the defendants.

Stennis alleged that he had served as a lookout while the defendants and Aaron Hayden, also known as Tyronne, broke into the Lafferty home.[1] Stennis's description of the items which the four took from Lafferty's house corroborated Lafferty's testimony. Stennis specifically testified that defendant Dickerson returned to the car with a .38-caliber handgun he had taken from the Lafferty residence.

The remainder of the case against the defendants was "similar acts evidence". Frank Sheckell described an attempted breaking and entering which occurred at his Birmingham home on April 27, 1981, thirty-four days after the charged offense. At approximately 3:15 a.m., on April 27, Sheckell was awakened by a noisy vehicle. A few minutes later he noticed a flashlight shining on the wall outside his bedroom door. Upon investigation, Sheckell saw persons outside by a downstairs window and another person walking back and forth on his porch. Upon hearing a tap on the window, and the window being raised, Sheckell turned on a light and yelled, and the intruders fled. The following evening, Sheckell found a revolver in his yard which proved to be the handgun stolen from Lafferty's house.

At approximately 8:30 a.m. on April 27, Officer John Hepner received a radio transmission that a woman in Bloomfield Township had found three people in her car in her garage. This ultimately led to the arrest of the defendants in the area of the Sheckell home.

---

[1] Aaron "Tyronne" Hayden was also charged in the Lafferty incident. However, he was never apprehended and, consequently, was not tried with the three defendants.

All three defendants admitted their involvement in the Sheckell incident. Their confessions were introduced into evidence. The trio stated that they ran away from the Sheckell house after hearing somebody scream and upon seeing a police car. Thereafter, the trio went to sleep in an automobile in a nearby garage.

Other facts will be set forth when relevant to specific issues.

## I. ISSUES COMMON TO ALL DEFENDANTS

Defendants first assert that the trial court erred in admitting into evidence the similar-acts testimony concerning the aborted attempt to break into the Sheckell residence. The admissibility of this evidence was extensively argued, and the trial court ultimately held that this evidence could be considered by the jury because the revolver taken in the Lafferty incident was found in Sheckell's backyard. The court apparently did not believe that the two criminal incidents were so similar that the other-acts evidence tended to establish defendants as the perpetrators of the Lafferty incident through proof of a distinctive common *modus operandi,* although the prosecution on appeal argues for the admissibility of the other-acts evidence on this basis.

In *People v Golochowicz,* 413 Mich 298, 308; 319 NW2d 518 (1982), the Supreme Court held that, before similar-acts evidence may be introduced, the following requirements must be satisfied:

"(1) there must be substantial evidence that the defendant actually perpetrated the bad act sought to be introduced; (2) there must be some special quality or circumstance of the bad act tending to prove the defendant's identity or the motive, intent, absence of mistake

or accident, scheme, plan or system in doing the act and, in light of the slightly different language of MRE 404(b) we add, opportunity, preparation and knowledge; (3) one or more of these factors must be material to the determination of the defendant's guilt of the charged offense; and (4) the probative value of the evidence sought to be introduced must not be substantially outweighed by the danger of unfair prejudice." (Footnote omitted.)

In this case, defendants contend that the other bad act had no tendency to show their identities as the perpetrators of the crimes committed at the Lafferty residence. We agree that the Sheckell offense and the charged offense were not so similar that it was, in the words of the prosecution on appeal, as "if each of the defendants personally signed their names on Mr. Sheckell's front door".[2] As appellate counsel for defendant Dickerson notes:

"Five participants, including accomplice Birk Stennis, were allegedly involved in the charged offense, while only three, defendant and codefendant Cedric and Abrom Hayden, participated in the subsequent breaking and entering. The charged offense took place late in the evening on the near east side of Detroit, the subsequent incident during the early morning hours in the northwest suburb of Birmingham. The charged offense was a brazen and forceful home invasion, the Birmingham incident a surreptitious cat burglar type crime."

In *Golochowicz, supra,* p 325, the Supreme Court made it clear that when similar-acts evidence is introduced to prove identity through a distinctive *modus operandi,* the prosecution must show a

[2] The prosecution argument is confused in that the relevant inquiry is whether the similarities between the Sheckell and Lafferty episodes were such that it can be said that the defendants left their signatures on Lafferty's door. The confessions by the defendants fully establish their involvement in the Sheckell matter.

"high degree of similarity" and that special characteristics "so uncommon, peculiar and distinctive" compel the conclusion that the defendant perpetrated the charged offense. In this case, to the extent that the charged offenses and the other acts were similar, they were not so distinctive as to compel the conclusion that the same person or persons were responsible for both criminal episodes. Indeed, the methods used to perpetrate each criminal episode strike us as singularly unexceptional and as being two common means of committing a breaking and entering.[3]

We next consider whether, because a revolver stolen from the Lafferty residence was found in Sheckell's yard within hours of the aborted effort to break into the Sheckell residence, the other-acts evidence was properly admitted. The parties argue this issue as if the dispositive question is whether a 34-day lapse of time between the theft of the revolver from Lafferty and its discovery on Sheckell's property is such that the revolver can be characterized as "recently stolen".[4] Defendants argue that this time lapse so attenuates any possible inference that the possessor was guilty of the theft of the revolver that, as a matter of law, the jury should not have been allowed to infer guilt of the theft from the possession. While this presents an

---

[3] Indeed, Stennis indicated that he was solicited by the other defendants to participate in a "rush job" of Lafferty's house. He defined a "rush job" as going up to somebody's house and simply walking inside. Stennis's testimony, itself, implies that the method used in the Lafferty incident is a recognized technique in breaking and entering offenses and anything but distinctive. Moreover, the aborted Sheckell breaking and entering was a surreptitious "cat burglar" type effort, not a "rush job".

[4] It is well established that the jury may infer that the possessor of recently stolen property was the thief. See, *e.g., People v Williams,* 368 Mich 494, 501; 118 NW2d 391 (1962), *cert den* 373 US 909; 83 S Ct 1297; 10 L Ed 2d 411 (1963); *People v Fry,* 17 Mich App 229, 231; 169 NW2d 168 (1969).

interesting question,[5] it is one which we believe need not be answered. The issue as argued by the parties simply ignores testimony pertinent to resolution of evidence of the other-acts problem.

The testimony at trial indicates that only one revolver was stolen from Lafferty's house. Birk Stennis, who admitted his involvement in the Lafferty incident and who alleged the involvement of the defendants, testified that defendant Dickerson returned from Lafferty's home with a .38-caliber revolver which Dickerson admitted he had taken from the house. No other handguns were taken from Lafferty's home. In respect to Dickerson, then, there was no reason to rely on the inference that one in possession of recently stolen property is the thief. Stennis's testimony sufficiently established Dickerson's status as the thief and possessor of the handgun. Thus, as to Dickerson, under the first three requirements of *Golochowicz, supra,* the trial court could permissibly

---

[5] No Michigan decisions have considered what lapse of time between the theft, and defendant's possession of, a firearm renders the inference that the possessor was the thief too attenuated to allow the inference to be drawn. This problem has been addressed by other jurisdictions which have reached conflicting results and which decisions are generally closely tied to the specific circumstances of the case. See Anno: *What Constitutes "Recently" Stolen Property Within Rule Inferring Guilty From Unexplained Possession of Such Property,* 89 ALR3d 1202, § 13, pp 1228-1229. None of the decisions collected in the annotation held that the inference could not be drawn where the time lapse between the theft and the discovered possession was as slight as 34 days. However, in at least one of these decisions, *Robinson v State,* 257 So 2d 300, 302 (Fla App, 1972), language employed in the opinion would support the notion that a 34-day lapse is too long. The *Robinson* Court said:

"[T]he doctrine as to possession of recently stolen property can be invoked when a longer period between the time of its theft and its discovery is involved where the item is an automobile which presents difficulty and legal complications for its sale or transfer, than would be applied to an item such as a *'two dollar pistol', which can be passed from hand to hand almost as readily as a pack of cigarettes.* In the instant case it does not appear to have been established that the gun in question was recently stolen property." (Emphasis added.)

allow the jury to consider his involvement in the Sheckell incident as material to a determination of his guilt in the Lafferty incident.[6]

As to the defendants Hayden, however, there was no evidence introduced which tended to show their joint possession of the handgun with Dickerson. Nor were any other items stolen from the Lafferty house and tied to the Haydens found on Sheckell's premises. Consequently, the other-acts evidence as to the Haydens required the jury to assume that any time Dickerson and others committed a criminal act, those others were the Haydens. In the absence of empirical evidence to the contrary, we do not believe it is reasonable to infer that, because a group of defendants committed one crime, that same group must also have committed a second crime because substantial evidence shows that one of the defendants participated in both offenses. Indeed, this case suggests a flaw in this inference. It is inherently believable that a criminal may commit his crimes with different accomplices. The other-acts evidence was impermissibly introduced against the Haydens, then, because the prosecution failed to prove that either of them possessed the handgun stolen from Lafferty.[7]

[6] Although MRE 404(b) is usually referred to as the similar-acts rule, the fact is that MRE 404(b) does not. even use the term "similar" but, rather, refers to "evidence of other crimes, wrongs or acts". The rule is most frequently invoked to prove matters which require a high degree of similarity between the charged offense and the other act for the other-acts evidence to be very probative and admissible. However, a "special quality or circumstance of the bad act" may give the other act a high degree of probative value even where there is little similarity between the other act and the charged offense. For instance, in a murder prosecution, depending on the specific circumstances, it may be proper to introduce testimony that the victim of the homicide had earlier reported to the police some other criminal activity of the defendant to establish a motive for the killing.

[7] This fact distinguishes this case from *People v Thompson,* 114 Mich App 302, 307; 319 NW2d 568 (1982), in which this Court allowed the inference to be drawn against one of two individuals, both of whom were stopped in a truck containing the stolen goods within

We must now consider whether the introduction of the other-acts evidence entitles any of the defendants to reversal of their convictions. In this regard, we note that the court was very careful to charge the jury as to the limited purpose for which the other-acts evidence could be considered. This is a factor which, as to each of the defendants, weighs in favor of a finding that the introduction of the evidence was not harmful.

Dickerson's counsel argues that, even if, as we have found, the first three prerequisites to admissibility under *Golochowicz* were satisfied, the probative value of the other-acts evidence was nevertheless substantially outweighed by the potential for unfair prejudice caused by its introduction. The evidence against Dickerson, apart from Stennis's testimony, was not very compelling. As Dickerson's counsel acknowledges, Stennis was extended favorable treatment by the prosecution in exchange for his testimony. Given this fact, the jury would naturally tend to be somewhat wary of his testimony. Under these circumstances, we cannot say that the trial court abused its discretion in finding that the probative value of the other-acts evidence was not outweighed by its prejudicial effect.

Dickerson also argues that a disproportionate amount of the trial was spent on the other-acts evidence given its limited purpose in the case, and, therefore, the jury may have been confused as to what crimes were actually in issue. We agree with defense counsel that entirely too much testimony was taken in respect to the Sheckell incident. The

minutes of the crime. In *Thompson*, this Court essentially found joint possession of the stolen property given that the defendant and the other person in the truck were apprehended together and other evidence tended to show that they had acted in concert to commit the crime.

prosecution should have been limited in its presentation of the other-acts evidence to Sheckell's testimony concerning the circumstances of the aborted breaking and entering, Dickerson's confession that he was at Sheckell's house with the intention of committing a breaking and entering (but redacted to exclude any reference to the Haydens as his cohorts), and proof that the gun found on Sheckell's property was the same weapon stolen from Lafferty. Nevertheless, we do not believe that Dickerson is entitled to reversal of his convictions on this basis. The most incriminating aspects of the other-acts evidence were properly admitted. In light of the court's cautionary instructions, we do not believe that the excessive scope of the other-acts evidence confused the jury or was otherwise harmful.

As to defendant Cedric Hayden, because he was identified by Lafferty at a line-up and in court, we find that the exclusion of the other-acts evidence would not have altered a reasonable juror's opinion that he was guilty of the crimes of which he was convicted. As we have relied on the identification of Cedric Hayden in finding admission of the other-acts evidence harmless as to him, we now analyze his argument that the line-up and in-court identifications should have been suppressed.

The following facts are applicable to the identification issue. Detroit Police Officer Jerry Conklin, the officer in charge of the Lafferty investigation, learned that the revolver taken from Lafferty's residence was found in Birmingham. He later discovered that Cedric Hayden, Abrom Hayden, and Eric Dickerson were in custody. Thereafter, Officer Conklin obtained photographs of the three defendants. These photos were placed in a mug book which contained in excess of 200 photos and

the book was shown to Lafferty at his residence. Lafferty tentatively identified defendants Dickerson and Cedric Hayden. No counsel was present at this showing, however, and the prosecutor conceded that, pursuant to *People v Anderson,* 389 Mich 155; 205 NW2d 461 (1973), the photographic identifications had to be suppressed.

Thereafter, a live line-up in which all three defendants participated was conducted. At this time, Lafferty identified Cedric Hayden as the gunman. Neither Dickerson nor Abrom Hayden was identified.

On appeal, and in the trial court, Cedric Hayden has asserted that the line-up and in-court identifications were mere extensions of the impermissible photographic show-up. The trial court conducted a *Wade* hearing *[United States v Wade,* 388 US 218; 87 S Ct 1926; 18 L Ed 2d 1149 (1967)], considered and weighed all the factors set forth in *People v Kachar,* 400 Mich 78; 252 NW2d 807 (1977), and found that there was an independent basis for both the line-up and in-court identifications. We will not upset a lower court's ruling at a suppression hearing unless it was clearly erroneous. *People v Ealey,* 102 Mich App 301, 305; 301 NW2d 514 (1980). On the record before us, we are convinced that the trial court's ruling was correct. Had the police exploited the photographic show-up conducted without counsel present we would have anticipated positive identifications of all of the defendants at that time. Moreover, Lafferty, who had tentatively identified Dickerson's photo, forthrightly admitted that the only person he could identify at the live line-up was Cedric Hayden. We are impressed with Lafferty's sincerity and find no error in the admission of his line-up and in-court identifications.

In respect to defendant Abrom Hayden's conviction, the admission of the other-acts evidence requires reversal. Without the other-acts evidence, the case against Abrom was based on accomplice Stennis's testimony. As noted earlier, there is reason to conclude that reasonable jurors might not have chosen to convict the defendants of any of the crimes alleged against them based solely on Stennis's testimony.

Defendants next assert that the trial court's other-acts evidence instruction was erroneous because it had the tendency to dilute the constitutionally required burden of proof beyond a reasonable doubt. See *In re Winship,* 397 US 358; 90 S Ct 1068; 25 L Ed 2d 368 (1970). Specifically, defendants object to the court's instruction that the jury could infer that defendants had taken the revolver if it found that defendants possessed it at a time when it could be characterized as "recently stolen" and this possession was "not explained". It is the phrase "not explained" appearing in the charge which defendants assert is constitutionally offensive. The court's instruction was patterned after CJI 23:1:02 which, at that time, used the phrase "if not explained" in respect to the permissible inference which may be drawn from possession of recently stolen property. A similar argument was made and rejected in *People v Wilbert,* 105 Mich App 631, 635-639; 307 NW2d 388 (1981). As in *Wilbert,* the trial court here was careful to instruct the jury that the inference need not be made. We conclude that the instruction passes constitutional review.

Defendants also assert[8] that the court's failure

---

[8] In fact, this issue is raised only by defendant Dickerson. However, because this is a consolidated appeal arising out of one trial, we choose to give each of the defendants the benefit of any issue raised by any one of the defendants to the extent that that issue is applica-

to incorporate CJI 3:1:10, ¶¶ 6 and 7, into its instruction on mixed direct and circumstantial evidence requires reversal of their convictions.[9] This argument was rejected in *People v Corbett,* 97 Mich App 438, 443-445; 296 NW2d 64 (1980), *lv den* 411 Mich 856 (1981). See also *People v Mahaday,* 108 Mich App 591, 595; 310 NW2d 805 (1981), *lv den* 411 Mich 1079 (1981).

Defendants further assert[10] that their convictions must be reversed because the prosecutor asked the police witness who took their statements whether Cedric Hayden had said that he possessed a gun while he was on Sheckell's property. All defense counsel objected, contending that the question was asked in violation of a court order. Following arguments outside the presence of the jury, the court ruled that the inquiry was impermissible. When the jury returned, the trial court delivered a strong cautionary instruction, telling the jurors not to speculate as to the answer which might have been given to the question.

It is not clear that the prosecutor violated the court's order by asking the question. The court

---

ble to more than one defendant. We do this to avoid inconsistent results on appeal which would only result in further appellate litigation.

[9] CJI 3:1:10(6) and (7), which has been superseded by CJI 4:2:02, provided:

"(6) Circumstantial evidence must be considered by the following rules:

"(A) The circumstances themselves must be believed.

"(B) The circumstances must be consistent with guilt and inconsistent with innocence.

"(C) The circumstances must be of such a conclusive nature and tendency that they convince you beyond a reasonable doubt of the defendant's guilt.

"(7) If the evidence is open to two reasonable constructions, one indicating guilt and the other innocence, it is your duty to accept the construction indicating innocence."

[10] This issue is actually raised only by defendant Abrom Hayden. See fn 8 *supra.*

had ruled inadmissible any testimony concerning the questioning of Cedric Hayden in respect to the theft of a gun in an unrelated crime. The prosecutor contended that he had no intention of asking about that crime but, rather, wanted to elicit testimony pertaining to Lafferty's gun found on the Sheckell property. The trial court ruled this line of questioning improper because the prosecutor admitted that each of the defendants had denied possessing a gun.

It is difficult to understand either the prosecutor's desire to elicit this testimony or the defense's desire to have it excluded. The anticipated responses would seem to support defendants' contention that they did not possess the Lafferty gun —particularly given that each of the defendants made statements in which they admitted an intent to commit criminal acts on the Sheckell property. In light of this fact and the court's cautionary instruction, we find no basis for reversal in this assignment of error.

Defendants also contend[11] that the trial court erred in charging the jury on their theories of the case without a request for such an instruction. Counsel for defendants objected to the court's action in this regard.[12] On appeal, defendants argue that the trial court misstated their theories of the case. Although the judges of this Court are not unanimous in their views, it has been held that, where a defendant fails to request an instruction on his theory of the case, the trial court is nevertheless obligated to provide such an instruction

---

[11] This claim is actually raised only by defendant Cedric Hayden. See fn 8 *supra*.

[12] Actually only counsel for Dickerson and Cedric Hayden spoke to this issue below. However, early in the proceedings the court told counsel that it would treat an objection by any one of them as pertaining to each of the defendants unless a particular attorney explicitly opted out of the objection.

where the theory presented by defendant is a central issue in the case. See, *e.g., People v Gayton,* 81 Mich App 390, 394; 265 NW2d 344 (1978). *Contra: People v Gary Wilson,* 122 Mich App 1, 2-3; 329 NW2d 513 (1982). In any case, if the trial court does take it upon itself to instruct on the defendant's theory, the theory presented must be accurate. *People v Peery,* 119 Mich App 207, 217; 326 NW2d 451 (1982).

In our opinion, the court's statement of defendants' theories of the case accurately summarized the arguments of defense counsel. On appeal, counsel fail to explicitly delineate in what manner the court's instruction was incorrect. Under these circumstances, reversal is not required.

Defendants also argue[13] that the trial court erred in allowing the prosecutor to indorse certain witnesses, including Birk Stennis, after the final pretrial hearing was conducted in this case. The statutory provision requiring the indorsement of witnesses, MCL 767.40; MSA 28.980, specifically allows for their late indorsement, even during trial. As the lower court noted, the purpose of this provision is to ensure that the defense has an adequate opportunity to prepare its case. See *People v Hence,* 110 Mich App 154, 166-169; 312 NW2d 191 (1981); *People v Henry,* 101 Mich App 585, 588; 300 NW2d 639 (1980), *lv den* 411 Mich 386 (1981). In allowing the late indorsement, the trial court adopted specific procedures to guarantee that the defense would have adequate time to prepare. Defendants have failed to prove that their ability to present their defenses was prejudiced by the late indorsement. We are convinced that the trial court did not abuse its discretion in this regard.

[13] This issue is raised by Cedric Hayden. See fn 8 *supra.*

Defendants also contend[14] that they were denied certain discovery in advance of trial. However, defendants fail to detail what evidence they were denied through discovery or how this denial prejudiced their defenses. Our review of the record fails to answer these questions. Consequently, we see no basis for reversal in this assignment of error.

Defendants' final common claim[15] is that the trial court erred in denying their motion for a mistrial, made after the following question was asked by the prosecutor during *voir dire:*

"You do understand that at some time in the past the defendants were arrested and charged with this crime. Is that correct?"

The trial court immediately cautioned the jurors that just because defendants were arrested and charged in connection with the crimes did not necessarily mean that they were guilty. Moreover, even in the absence of such a cautionary instruction, we do not believe that this inquiry would compel reversal. It would be the height of naiveté to believe that the jurors would not surmise that the defendants had been arrested for, and charged with, the crimes for which they were on trial.

## II. ISSUES COMMON TO DICKERSON AND CEDRIC HAYDEN

Defendants assert[16] that the trial court's instructions on armed robbery were erroneous and require reversal. The trial court charged the jury that, if defendants were in actual possession of a

---

[14] This issue is actually raised by Cedric Hayden. See fn 8 *supra.*

[15] This issue is raised by Cedric Hayden. See fn 8 *supra.*

[16] Since Abrom Hayden was acquitted of armed robbery, this issue is inapplicable to him.

dangerous weapon at the time they robbed Lafferty, they could be convicted of armed robbery even if the weapon was not used or seen by Lafferty.

The parties frame this issue as requiring us to choose between one or two conflicting analyses heretofore adopted by different panels of this Court. In *People v Parker (On Rehearing)*, 100 Mich App 406; 299 NW2d 56 (1980), this Court held that a defendant could be convicted of armed robbery in the absence of proof, apart from his mere words, that he possessed a dangerous weapon or an article used or fashioned as a dangerous weapon. In *People v Krist*, 93 Mich App 425, 431-433; 287 NW2d 251 (1979), *lv den* 407 Mich 963 (1980), on the other hand, this Court held that an armed robbery conviction could not be sustained where only the defendant's oral insinuations would support a finding that defendant possessed a gun in committing the robbery.

Following the submission of this case, however, the Michigan Supreme Court issued its opinion in *People v Parker*, 417 Mich 556; 339 NW2d 455 (1983), reversing this Court's decision in *Parker* on the basis that the trial court's instructions on armed robbery did not stress that the jury's focus must be on the actual presence of a weapon and not the belief of the victim that defendant possessed a weapon. In *Parker*, the prosecution's case for an armed robbery conviction rested on defendant's actual possession of a dangerous weapon. The Supreme Court determined that there was not sufficient evidence from which the jury could conclude that defendant had fashioned an article harmless in itself in such a manner as to induce the victim's reasonable belief that he did possess a dangerous weapon. The Supreme Court in *Parker*

rejected the reasoning of *Krist* to the extent that *Krist* held that the defendant's mere words are insufficient to establish that he did, in fact, possess a dangerous weapon.

The armed robbery statute, MCL 750.529; MSA 28.797,[17] as recently acknowledged by the Supreme Court in *Parker,* embodies two alternative methods for proving a violation of the statute. The first method is proof beyond a reasonable doubt that a dangerous weapon was possessed, whether or not the weapon was actually seen by the victim. This alternative represents an eminently reasonable legislative determination that the mere possession of a dangerous weapon escalates the risk of violence and the degree of danger to the victim, even if the weapon is not seen by the victim.[18] If the weapon is possessed by the defendant, the possibility that it will be used exists and this is a sufficient basis to define the offense as an armed robbery.

The second method of proving an armed robbery is to show that the defendant used or fashioned an article in such a manner as to cause the victim to reasonably believe that a dangerous weapon could be employed. Several reasonable legislative decisions could be the basis for this alternative. First, where the defendant induces the victim to turn

---

[17] MCL 750.529; MSA 28.797 provides in pertinent part:

"Any person who shall assault another, and shall feloniously rob, steal and take from his person, or in his presence, any money or other property, which may be the subject of larceny, such robber being armed with a dangerous weapon, or any article used or fashioned in a manner to lead the person so assaulted to reasonably believe it to be a dangerous weapon, shall be guilty of a felony, punishable by imprisonment in the state prison for life or for any term of years."

[18] Indeed, the failure of the robber to show the dangerous weapon he possesses may well affirmatively enhance the prospects that the robbery will become violent. The victim who is not shown the dangerous weapon is more likely to attempt to resist than is the victim staring down the wrong end of a gun barrel.

over his property by the threat of violence associated with a dangerous weapon, since that false threat and apparent possession of the weapon nevertheless facilitate the robbery, the Legislature might have concluded that the defendant should be treated as if he actually did possess the dangerous weapon. Second, the Legislature could simply have been concerned that persons actually guilty of armed robbery would escape liability commensurate with their acts because of the frequent inability of the victim to honestly testify to anything more than that "it looked like the defendant had a gun". Third, the Legislature could have concluded that the potentially more severe psychological consequences to the victim of an assault believed to be accomplished with a dangerous weapon should be the basis for escalating the defendant's criminal liability.

In this case, Lafferty positively identified Cedric Hayden as the individual who pointed a sawed-off shotgun in his face. As such, the evidence was certainly sufficient to convict him of armed robbery. Without regard to the possibility that Dickerson was found guilty as an aider and abettor, Stennis testified that Dickerson went into Lafferty's house armed with a handgun. We believe that this testimony was sufficient to allow the jury to conclude that Dickerson possessed a dangerous weapon.

Unlike the situation in *Parker,* the trial court's instructions in this case did not direct the jury's attention to the victim's belief that defendants were armed but, rather, the actual presence of a weapon. Therefore, no reversal is required on this basis.

Defendants also argue[19] that their convictions

---

[19] This issue is raised by Cedric Hayden. See fns 8 and 16 *supra.*

must be reversed because no gun was ever introduced into evidence. In *People v Mason,* 96 Mich App 47, 51; 292 NW2d 480 (1980), one panel of this Court said in dictum that, where the victim testifies that he saw a gun, the defendant may permissibly be convicted of felony-firearm even if the weapon is never recovered. We agree with this view. Where conviction of an offense requires proof beyond a reasonable doubt that a defendant possessed a firearm, this element may be proven without the actual admission into evidence of the weapon. To hold otherwise would greatly reduce the protections afforded by those statutes intended to stop the illegal use of firearms.

### III. Issue Applicable to Cedric Hayden Only

Defendant contends that the trial court invaded the province of the jury by giving the jurors the impression that defendant made statements to a police officer concerning the Sheckell incident. We disagree. In instructing the jury in respect to the alleged statements, the trial court was careful to inform the jurors that they must find that each statement was, in fact, made by Cedric Hayden before they could consider that statement for any purpose.

### IV. Issues Applicable to Abrom Hayden Only

Defendant contends that the evidence was insufficient to support his conviction for breaking and entering. Specifically, defendant alleges that the prosecution failed to show that he participated in a breaking. We disagree. Stennis testified that he was approached by the three defendants and Aaron "Tyronne" Hayden to participate in a "rush job". Stennis served as a lookout, and stated that

Abrom returned with a rifle and some coins. Lafferty testified that his door had been damaged during the breaking. Although the evidence is not compelling that this defendant actually participated in the breaking of the door, the evidence was ample to prove defendant's guilt as an aider and abettor beyond a reasonable doubt. *People v Clark,* 34 Mich App 70, 72; 190 NW2d 726 (1971).

### V. ISSUE APPLICABLE TO DICKERSON ONLY

Defendant contends that he was denied the effective assistance of counsel when his substitute attorney at sentencing failed to bring to the court's attention several factual errors in the presentence report. Moreover, defendant contends that substitute counsel was ineffective in that he failed to inform the judge that the prosecution had recommended a sentence of 10 to 20 years imprisonment in a pretrial conference before this case was tried and in failing to argue that, by acquitting defendant of the felony-firearm count, the jury must have believed he was not as culpable as the other participants in the Lafferty episode.

We are precluded from granting defendant any relief. In an order dated February 1, 1983, another panel of this Court denied defendant's motion to remand on this same issue "for lack of merit in the ground presented". Therefore, we are precluded from reaching the merits of this issue by the law of the case doctrine. See, *e.g., People v Wiley,* 112 Mich App 344, 346; 315 NW2d 540 (1981).

Defendant Dickerson's and defendant Cedric Hayden's convictions are affirmed. Defendant Abrom Hayden's conviction is reversed and his case is remanded for a new trial.