*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellant,

v

DOMINIQUE ARNETT RAMSEY, JR.,

Defendant-Appellee.

UNPUBLISHED
September 10, 2020

No. 334614
Saginaw Circuit Court
LC No. 15-041847-FC

ON REMAND

Before: RONAYNE KRAUSE, P.J., and FORT HOOD and O'BRIEN, JJ.

PER CURIAM.

This case again returns to this Court, now on remand from our Supreme Court for reconsideration in light of *People v Sammons*, ___ Mich ___; ___ NW2d ___ (Docket No. 156189). *People v Ramsey*, ___ Mich ___; 943 NW2d 138 (2020). We reiterate our previous conclusion that, as the trial court erred when it earlier decided that the prosecution presented insufficient evidence to convict defendant of conspiracy, it erred again when it repeated its sufficiency analysis on remand while ordering a new trial for defendant ostensibly on the basis of the great weight of the evidence. However, we further recognize that the evidentiary error over which the Supreme Court granted codefendant Sammons a new trial entitles defendant to a new trial as well. We remand for that purpose.

## I. FACTUAL AND PROCEDURAL BACKGROUND

This case concerns the involvement of defendant, Dominique Ramsey, in the shooting death of Humberto Casas, which took place in Saginaw on the afternoon of June 21, 2015. The prosecution's theory of the case was that Travis Sammons shot Casas, and that defendant drove the vehicle that brought Sammons to and from the scene. Defendant and Sammons were jointly tried, each on charges of open murder, MCL 750.316, conspiracy to commit murder, MCL 750.157a, possession of a firearm by a felon, MCL 750.224f, and three counts of possession of a firearm during the commission of a felony, MCL 750.227b. The jury found both defendant and Sammons guilty of conspiracy only.

In *Sammons*, ___ Mich at ___; slip op pp 2-4, the Supreme Court provided the following summary of the facts:

> Humberto Casas was shot on the street in Saginaw on June 21, 2015, at approximately 1:00 p.m. Sixteen-year-old DyJuan Jones witnessed the shooting, as did Rosei Watkins. Jones was riding in the backseat of a car being driven by his mother when he heard the shots, and Watkins was driving with her grandson in her own car. Jones saw a light gray Jeep, its driver, and another man who was wielding a gun. Jones did not note the model of the Jeep and "wasn't paying attention" to the gunman. Jones described both men as black and wearing white shirts. Jones described the driver as weighing about 320 pounds with a long beard, and the gunman as being bald and wearing black pants. Watkins, on the other hand, thought the driver was of average build. Jones saw the gunman shoot a Hispanic man— Casas. . . . Jones did not see the gunman get into the Jeep, but he saw the Jeep leave going 60 to 70 miles per hour. Jones told the police that the Jeep's license plate number contained either "CE" or "GE." Jones and his mother, a nurse, initially left but then returned to the scene for her to render aid. Casas died from his injuries.

> About 10 to 20 minutes later, the police pulled over Travis Sammons and [defendant] in a silver Jeep Commander that had the license plate number DFQ 9593. Both men wore white shirts. [Defendant] weighed about 150 pounds at the time, and had facial hair that one police officer characterized as "short stubble." Although [Sammons] had a short hairstyle, he was not bald. The officer ordered [defendant] out of the Jeep, searched him, handcuffed him, and put him into the back of the patrol car. . . . Nothing of interest was found in the searches of the men or the Jeep. Both men were taken to the Saginaw Police Department, where they were detained. A photo of the Jeep was taken and shown to Watkins, who identified it as the Jeep from the shooting.

> Jones and his mother went to the police station early that evening. Michigan State Police Detective Sergeant David Rivard met them and organized a showup identification of [Sammons] and [defendant]. At the preliminary examination, Detective Sergeant Rivard explained, "it's common that what we can do is call a show up, is to show . . . the possible witnesses' [sic] the possible suspects to see if in fact we are doing our investigation in the right direction." He further explained that the showup was conducted because suspects had been identified relatively quickly.

> The station has three interview rooms, and the detective sergeant put [Sammons] in one interview room and [defendant] in another. The men were alone in their respective rooms, wore their street clothes, and were unrestrained. The detective sergeant took Jones to the rooms for the purpose of making an identification. The detective sergeant testified there was nothing out of the ordinary about conducting a showup this way. . . .

Jones would say that he could identify neither man as having been involved in the shooting, while the detective sergeant would say that Jones identified [Sammons] as the shooter but did not identify [defendant]. . . .

As noted, the jury rejected the murder and firearms charges, finding defendant and Sammons guilty of conspiracy only. Defendant, however, persuaded the trial court to enter a directed verdict of acquittal on grounds of insufficient evidence; the court alternatively granted a new trial on the ground that the verdict was contrary to the great weight of the evidence. However, the court sentenced Sammons, as a third-offense habitual offender, MCL 769.11, to serve life imprisonment. *People v Sammons*, unpublished per curiam opinion of the Court of Appeals, issued July 6, 2017 (Docket No. 332190), p 1.

The prosecution filed a delayed application for leave to appeal, which this Court denied,[1] but thereafter, in lieu of granting leave, our Supreme Court remanded the case to this Court "for consideration as on leave granted." *People v Ramsey*, 500 Mich 980; 893 NW2d 342 (2017). The instant panel of this Court reversed "the trial court's order granting defendant's motion for a directed verdict of acquittal and conditionally granting defendant a new trial," and remanded the case for sentencing proceedings "consistent with the jury's verdict." *People v Ramsey*, unpublished per curiam opinion of the Court of Appeals, issued April 24, 2018 (Docket No. 334614), p 12. Presiding Judge KRAUSE concurred in the result, but wrote separately in order to elaborate on "*why* we find the jury could have found the video inculpatory." *Ramsey* (KRAUSE, J, concurring), unpub op at 1.

The Supreme Court in turn vacated this Court's judgment insofar as it reversed the trial court's decision to grant a new trial on the ground that the verdict was contrary to the great weight of the evidence, and remanded the case to this Court "for consideration as on reconsideration granted" while reminding this Court that, "[t]hough there may be sufficient evidence to convict when the evidence is viewed in the light most favorable to the prosecutor, that does not render a decision on the great weight of the evidence an abuse of discretion." *People v Ramsey*, 503 Mich 941 (2019). The Supreme Court directed this Court to "determine whether the decision to grant a new trial was within the range of principled outcomes in light of the trial court's finding that the jury verdict resulted in a miscarriage of justice." *Id.*, citing MCR 6.431(B).

In response, the instant panel of this Court, on its own motion, remanded the case to the trial court for "further explanation of its reasons for conditionally granting defendant's motion for a new trial after defendant was convicted by a jury of conspiracy to commit first-degree murder." *People v Ramsey*, unpublished order of the Court of Appeals, entered April 4, 2019 (Docket No. 334614). The trial court answered by clarifying that it did not conditionally grant a new trial on the basis of its own credibility determinations, or conflicts in the evidence, but rather did so because "the witness testimony presented, even when accepted as true and combined with the other evidence introduced at trial, did not establish beyond a reasonable doubt that Defendant committed the offense of conspiracy to commit first-degree premeditated murder." The trial court thus reiterated its conclusion regarding the sufficiency of the evidence, did not actually engage in the

---

[1] *People v Ramsey*, unpublished order of the Court of Appeals, entered December 29, 2016 (Docket No. 334614).

analysis appropriate for a great-weight determination. Confirming that the trial court simply applied the sufficiency standard under the rubric of great weight of the evidence is that the court cited *People v Lane*, 308 Mich App 38, 57; 862 NW2d 446 (2014), which set forth and applied the standards applicable to sufficiency review, but not those applicable to great-weight analysis.

After the proceedings on remand and a round of supplemental briefing, the instant panel of this Court issued an opinion noting that the trial court engaged in sufficiency review to the exclusion of great-weight review, and again remanded the case for "sentencing proceedings and entry of a judgment of sentence consistent with the jury's verdict." *People v Ramsey (On Remand)*, unpublished per curiam opinion of the Court of Appeals, issued July 2, 2019 (Docket No. 334614), pp 1, 12. Defendant then sought leave in the Supreme Court, which, as noted above, in lieu of granting leave remanded the case to this Court for reconsideration of its opinion on remand in light of the Supreme Court's decision in codefendant Travis Sammons's appeal. *Ramsey*, ___ Mich ___; 943 NW2d 138 (2020), citing *People v Sammons*, ___ Mich ___; ___ NW2d ___ (Docket No. 156189).

II. ANALYSIS

As a preliminary matter, we do not view the Supreme Court's remand order as an invitation to reengage in the trial court's great-weight analysis. Our Supreme Court's decision in *Sammons* brought to light the erroneous introduction of certain evidence identifying Sammons as the shooter, but otherwise discussed only such routine evidentiary conflicts as inconsistent descriptions, and no gross evidentiary irregularities of the sort that would call for a renewed great-weight analysis.[2] However, the exposure of erroneous identification evidence in *Sammons* nonetheless throws into doubt the validity of defendant's conviction.

The circumstantial evidence linking defendant to the subject crime included that, shortly after the shooting, the police stopped defendant while he was driving a jeep with Sammons as his passenger. But if Sammons was not properly linked to the crime, then being in Sammons's company shortly afterward could hardly implicate defendant in the matter. Notably, in our initial opinion in this case, we attached great significance to the identification of Sammons as the shooter, having noted that "Sergeant David Rivard . . . testified that . . . [DyJuan] Jones positively identified Sammons as the shooter," *Ramsey*, unpub op p 4, and stated that "[s]ignificantly, Jones clearly identified Sammons as the shooter who fired multiple shots at Casas, and in a very short time period following the murder, defendant and Sammons were apprehended, driving together . . . ." *Id.* at 11.

---

[2] Again, on remand, the trial court clarified that it neither assessed credibility nor concerned itself with evidentiary conflicts, but rather considered the evidence in the light most favorable to the prosecution. In addition, while this case presented some evidentiary conflicts, we discerned nothing patently incredible, or in defiance of physical realities, as might engender a valid claim that the verdict was contrary to the great weight of the evidence. See *People v Lemmon*, 456 Mich 625, 643-644; 576 NW2d 129 (1998).

The Supreme Court, however, apparently found the identification of Sammons attributed to Jones less satisfying, stating:

> Jones would say that he could identify neither man as having been involved in the shooting, while the detective sergeant would say that Jones identified [Sammons] as the shooter but did not identify [defendant]. No one witnessed the conversation between Jones and the detective sergeant, and the conversation was not recorded in any way. Jones did not sign any kind of statement or report indicating that he had made an identification. [*Sammons*, ___ Mich at ___; slip op p 4.]

The Supreme Court further noted that "Jones was repeatedly questioned about making an identification at the preliminary examination, and every time he denied making an identification." Specifically, Jones said, 'I seen the gun, I can't identify the person who was really.' " *Id.* at ___; slip op p 5. The Court was also concerned that "Jones's description was wrong about the most specific details of the suspects," that "Jones denies even making an identification," and that "the detective sergeant provided no information about Jones's level of certainty at the confrontation." *Id.* at ___; slip op 19-20.

Regardless, if Officer Rivard's testimony that Jones identified Sammons as the shooter were properly admitted, it and Jones's statements to the contrary would present merely a routine credibility contest. But the Supreme Court concluded that the showup engendering that alleged identification of Sammons was itself "unnecessarily suggestive and unreliable," and so decided to "suppress any evidence from the showup" and order a new trial. *Id.* at ___; slip op p 25. Moreover, the Supreme Court's concluded that "the only difference between the evidence against [Sammons] and [defendant] was the showup." *Sammons*, ___ Mich at ___; slip op p 24. That difference was that an eyewitness allegedly identified Sammons as the shooter, but could not identify defendant as the driver. But if the result of that showup directly implicated Sammons in the crime, that result indirectly implicated defendant, given that, shortly after the crime, he was driving a vehicle similar to what the eyewitnesses described with the supposedly identified shooter as his passenger. Thus, the Supreme Court's conclusion that the evidence resulting from the improper showup invalidated Sammons's guilty verdict compels the conclusion that it also invalidated defendant's guilty verdict. The question then becomes the relief to which defendant is entitled.

" '[U]nder the doctrine of the law of the case, if an appellate court has passed on a legal question and remanded the case for further proceedings, the legal question will not be differently determined in a subsequent appeal in the same case where the facts remain materially the same.' " *Ingham Co v Mich Co Rd Comm Self-Ins Pool*, 329 Mich App 295, 303; 942 NW2d 85 (2019), quoting *Bennett v Bennett*, 197 Mich App 497, 500; 496 NW2d 353 (1992). In this case, the invalidation of the evidence resulting from the showup constituted a factual development that might render the doctrine of the law of the case inoperable. See *Ingham Co*, 329 Mich App at 304 ("courts have some discretion when applying the law-of-the-case doctrine under certain circumstances"). But there is no need to avoid the doctrine here, because again, the result in *Sammons* does not call for reconsideration of this Court's conclusions that the trial court erred in finding the evidence insufficient, and that the court never in fact engaged in great-weight review.

Although the Supreme Court's conclusion that the showup from which Officer Rivard testified that Jones identified Sammons was "unnecessarily suggestive and unreliable," and its consequent decision to "suppress any evidence from the showup" while remanding that case for a new trial, *Sammons*, ___ Mich at ___; slip op p 25, undercuts one of the key bases for rejecting defendant's sufficiency challenge all along, as *Sammons* itself illustrates, evidentiary error does not call for sufficiency review confined to the properly admitted evidence and the potential remedy of acquittal, but rather offers the remedy of retrial.[3]

In *People v Hayden*, 132 Mich App 273, 288 n 8; 348 NW2d 672 (1984), this Court recognized its prerogative to give both defendants in a consolidated appeal following a joint trial the benefit of its decision on an issue raised by only one of them. In this case, had both defendant and codefendant Sammons been convicted and sentenced as the result of their joint trial, likely consolidated claims of appeal would have followed. But the different procedural appellate postures of those two codefendants, with defendant responding to a prosecutor's appeal after his directed verdict of acquittal and Sammons claiming an appeal after conviction and sentencing, did not recommend consolidation. That distinction from *Hayden* should not render inapplicable its recognition of a defendant's right to share in the benefits of a codefendant's appellate advocacy.

Even so, had defendant exhausted all appeals and his case thus reached finality before *Sammons* was decided, a motion for relief from judgment[4] predicated on an aspect of *Sammons* favorable to defendant might well have been rebuffed on the ground that a party may not "sleep on his rights until a subsequent appellate court decision rouse[s] him to action." *Lothian v Detroit*, 414 Mich 160, 175; 324 NW2d 9 (1982). This case poses a different question, however, because, far from sleeping on his rights, defendant is in the middle of the appellate process—a process that first placed defendant before this Court as the appellee in a prosecutor's appeal, and thereafter as the result of remands from our Supreme Court. Defendant's posture before this Court has always been one of defending the trial court's decision to set aside his jury's guilty verdict, which result the court arrived at while assuming the validity of the identification of Sammons, and thus that defendant was driving a jeep with the shooter as his passenger shortly after the crime, as part of its duty to view the evidence in the light most favorable to the prosecution.[5] An appellate challenge to the validity of that identification would not have been germane to defendant's appellate mission to date. That is apt to change, however, if this Court were to stand on its decisions reversing the trial court's finding of insufficient evidence, and the court's reiteration of that finding under the rubric of the great weight of the evidence, and reinstates the jury's verdict.

---

[3] If retrial does come about, the prosecution will have the opportunity to prove, or burden of proving, Sammons's identity as the shooter by means other than the police officer's account of how one eyewitness responded to the now-disapproved showup. See *People v Yost*, 278 Mich App 341, 356; 749 NW2d 753 (2008) (the identity of the offender is an element in every offense). Whether and how the prosecution will accomplish that remains to be seen, and is no concern here.

[4] See MCR 2.612(C)(1)(f).

[5] Including, as noted, when it reiterated its sufficiency decision while ostensibly considering the great weight of the evidence.

In the interests of justice and judicial economy, we decline to wait for defendant to put before us the issue of the invalid identification of Sammons as the shooter but rather proceed directly to deciding what relief that development entitles him. This Court "is *empowered* . . . to go beyond the issues raised and address any issue that, in the court's opinion, justice requires be considered and resolved." *People v Cain*, 238 Mich App 95, 127; 605 NW2d 28 (1999) (quotation marks and citation omitted). For these reasons, we reiterate our conclusions that the trial court erred by concluding that the prosecution failed to present sufficient evidence to support defendant's conspiracy conviction, and erred again in reiterating that conclusion under the rubric of deciding that the guilty verdict was contrary to the great weight of the evidence. However, in light of *Sammons*, we hold that the evidentiary error that the Supreme Court concluded entitled codefendant Sammons to a new trial entitles defendant to a new trial as well.

Remanded for further proceedings consistent with this opinion. We do not retain jurisdiction.

/s/ Amy Ronayne Krause
/s/ Karen M. Fort Hood
/s/ Colleen A. O'Brien