PEOPLE v SAENZ

Docket No. 63565. Decided July 13, 1981. On request by the defendant for review of the record the Supreme Court, after response by the prosecutor to an order to show cause why the defendant's conviction should not be reversed, in lieu of granting leave to appeal, reversed the defendant's conviction of armed robbery and remanded for entry of a judgment of conviction of unarmed robbery and resentencing.

Richard A. Saenz was convicted by a jury in Washtenaw Circuit Court, Patrick J. Conlin, J., of armed robbery. The victim, who was a salesperson at a Fotomat store, testified that he thought that the defendant had a weapon of some kind under his coat when the defendant said "give me all the money in the register". At the close of the prosecution's case, the trial court denied the defendant's motion for a directed verdict of acquittal on the armed robbery charge. The Court of Appeals, Danhof, C.J., and V. J. Brennan and Carroll, JJ., affirmed in an unpublished per curiam opinion (Docket No. 77-5219). Defendant requests review of the record.

In a unanimous opinion the Supreme Court *held:*

The belief of the victim that the robber is armed must be induced by the use or fashion of "any article" with which the assailant is armed. Testimony that a defendant used his hand and a covering to resemble a gun has been held to raise a question for the jury whether the defendant was armed with an article used to induce the reasonable belief that it was a dangerous weapon, but such cases are inapposite because there is no such testimony in the record here. The victim's testimony here was that he *thought* the defendant had a weapon of some kind, but that he saw no article which resembled a weapon, or a bulge under the defendant's coat, or his hand shaped to look like a weapon. Such testimony cannot be the basis for a conviction of armed robbery.

Reversed and remanded for resentencing on a conviction of unarmed robbery.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *William F. Delhey,*

Prosecuting Attorney, and *David A. King,* Assistant Prosecuting Attorney, for the people.

*Wm. Douglas Winters* for defendant.

Per Curiam. Defendant's conviction of armed robbery[1] was affirmed by the Court of Appeals. His brief raised three questions, only one of which persuaded us of merit. Accordingly we directed the prosecutor to show cause why the defendant's conviction should not be reversed because there was insufficient evidence that any article was used or fashioned so as to lead the victim to believe that it was a weapon.

Upon consideration of the prosecutor's response and the record of the trial testimony we reverse the defendant's armed robbery conviction and remand to the Washtenaw Circuit Court for entry of a judgment of conviction of unarmed robbery and for resentencing.

The armed robbery statute reads:

"Any person who shall assault another, and shall feloniously rob, steal and take from his person, or in his presence, any money or other property, which may be the subject of larceny, such robber being armed with a dangerous weapon, or *any article used or fashioned in a manner to lead the person so assaulted to reasonably believe it to be a dangerous weapon,* shall be guilty of a felony * * *." MCL 750.529; MSA 28.797.

At the close of the prosecution's case, the defendant's motion for a directed verdict on the armed robbery charge was denied. His theory was that there was no evidence that the defendant was armed with a dangerous weapon, or any article used or fashioned in a manner to lead the victim

[1] MCL 750.529; MSA 28.797.

to reasonably believe it to be a dangerous weapon. The only testimony relevant to this question was that of the victim. On direct examination, he described the circumstances leading up to the robbery:

"*A.* * * * I went over to the register and counted out the change. As I was handing him back the change, he says, 'Whil[e] you're at it, give me all the money in the register.'

"*Q.* Where did he have his hand, if anywhere?

"*A.* He was leaning on the outside ledge on his left elbow with his left hand inside the window.

"*Q.* Where was his right hand?

"*A.* His right hand was underneath his coat on the right side.

"*Q.* Could you stand up, please, and demonstrate to the Jury what you mean?

"*A.* Well, he was kind of leaning like this into the window, and he had his hand under here like this (indicating)."

The victim was asked about his reaction to the situation:

"*Q.* What, if anything, did you think at the time that he said, 'You'd better give me the rest of the money,' or, 'Why don't you give me the rest of the money,' and had his hand in his coat?

"*A.* Well, at first it kind of stunned me. And then I looked at him, and he looked like he meant business, so I went over and got the money out of the register.

"He told me to put it in a bag. But as I was getting it out, I asked him, 'Do you want me to put it in a bag?' And he said no, just give it to him.

"*Q.* What did you think that he had in his hand?

"*A.* I thought he might have a—some kind of weapon."

Then, on cross-examination, the victim testified as follows:

"*Q.* Now, in this—on May 18th, 1976, you never saw a weapon, is that correct?

"*A.* No, I didn't.

"*Q.* And the man that robbed you had never said that he had a gun or any weapon, is that correct?

"*A.* He did not say he had one.

\*   \*   \*

"*Q.* Right. And is it also correct that you never saw a bulge under his coat?

"*A.* Well, he—when he walked up, his coat was unbuttoned.

"*Q.* At that time you never saw a bulge under his coat?

"*A.* I was not looking for one.

"*Q.* Did you ever see any article which resembled a weapon?

"*A.* No, I didn't.

"*Q.* Now, when the robber had his hand underneath his coat, that hand did not resemble a weapon, is that correct?

"*A.* I didn't look too close. All I noticed was he had his hand underneath his coat.

"*Q.* Okay. So, basically, the hand was out of sight, underneath the coat?

"*A.* All the way up to the sleeve of the coat.

"*Q.* Okay. But is it also correct that the hand itself was not shaped in the form of a weapon, is that correct?

"*A.* I couldn't tell.

"*Q.* As far as you know.

"*A.* I couldn't tell under the coat, no.

"*Q.* So far as you know, the hand was not shaped—

"*A.* As far as I know.

"*Q.* Okay. To look like a weapon, is that correct?

"*A.* Correct."

The prosecutor argues that the victim believed

the defendant had a weapon and that this was a reasonable belief under the circumstances. This argument addresses only one consideration and ignores the requirement that the belief must be induced by the use or fashion of "any article" with which the assailant is armed.

The Court of Appeals based its holding herein on the authority of *People v Shipp,* 34 Mich App 67; 190 NW2d 750 (1971), and *People v Jury,* 3 Mich App 427; 142 NW2d 910 (1966). The rule of these cases is that testimony that defendant used *his hand and a covering so as to resemble a gun* raises a factual question for the jury's consideration, as to whether defendant was armed with an article used to induce the reasonable belief that it was a dangerous weapon.

The correctness of these decisions is not before us, for there was no such testimony in this record.

In sum the victim's testimony here was that he thought the defendant had a weapon of some kind; he saw no article which resembled a weapon; he saw no bulge under defendant's coat nor his hand shaped to look like a weapon.

Such testimony cannot be the basis for an armed robbery conviction.

Reversed and remanded for resentencing on unarmed robbery.

COLEMAN, C.J., and KAVANAGH, WILLIAMS, LEVIN, FITZGERALD, RYAN, and BLAIR MOODY, JR., JJ., concurred.