PEOPLE v PARKER .

Docket No. 66028. Argued March 10, 1983 (Calendar No. 21).—Decided October 24, 1983. Certiorari denied by the Supreme Court of the United States on April 30, 1984.

Gregory D. Parker was convicted by a jury in the Recorder's Court of Detroit, Harry A. Laity, J., of armed robbery and first-degree criminal sexual conduct. The Court of Appeals, M. J. Kelly, P.J., and M. F. Cavanagh, J. (Elliott, J., concurring in the result only), affirmed in an opinion per curiam (Docket No. 78-4174). The defendant appeals.

In an opinion by Justice Kavanagh, joined by Chief Justice Williams and Justices Levin and Brickley, the Supreme Court *held*:

The arrest of the defendant without a warrant and the search incident to the arrest were not justified because there were no exigent circumstances; the defendant's motion to suppress the evidence seized should have been granted; and the evidence that the defendant was armed was insufficient to sustain a conviction of armed robbery.

1. The arrest of a defendant in his home without a warrant is not justified absent exigent circumstances. The essence of the exigency which would excuse the failure to obtain a warrant is the existence of circumstances known to the police which prevent them from taking the time to obtain a warrant because to do so would thwart the arrest. In this case, the facts do not support a finding of exigent circumstances sufficient to obviate the need for a warrant. The police did not arrest the defendant

REFERENCES FOR POINTS IN HEADNOTES

[1-3] 68 Am Jur 2d, Searches and Seizures § 44.

[3, 8] 68 Am Jur 2d, Searches and Seizures §§ 2, 4.

"Fruit of the poisonous tree" doctrine excluding evidence derived from information gained in illegal search. 43 ALR3d 385.

[4] 67 Am Jur 2d, Robbery §§ 4, 5, 23.

[6] 21A Am Jur 2d, Criminal Law §§ 752, 984-987.

Modern status of rules and standards in state courts as to adequacy of defense counsel's representation of criminal client. 2 ALR4th 27.

[7] 47 Am Jur 2d, Jury §§ 92, 267, 269.

for over five hours after receiving his description, and no explanation was offered as to why a warrant was not sought during the interval. Therefore the evidence seized was not admissible.

2. To be convicted of armed robbery, a person must possess an article which in fact is a dangerous weapon or an article harmless of itself which is used in a manner to induce a reasonable belief that it is a dangerous weapon during the robbery. It is not sufficient that the victim thought that the defendant was armed. The focus is on the presence of the weapon or article and not the fear or belief of the victim. In this case only evidence that the defendant threatened to use a weapon was presented.

3. The instruction to the jury on armed robbery was error in that it required a finding only that the victim had a reasonable belief that the defendant was armed with a dangerous weapon at the time of the assault.

4. Introduction by defense counsel of evidence of the defendant's prior conviction of assault with intent to rob, not being armed, as a trial tactic did not amount to ineffective assistance of counsel.

5. Compulsion of attendance of a juror at the trial by the court after determining that her claimed illness was not so serious as to justify her absence does not warrant the assumption that the defendant was prejudiced, absent a basis on the record for such an assumption.

Justice Ryan, concurring, stated that because the jury learned that the entry into the defendant's room without a warrant resulted in the seizure of the exact amount of money claimed by the victim to have been stolen, it could not be concluded that the violation of the defendant's constitutional rights was harmless beyond a reasonable doubt.

Reversed and remanded.

96 Mich App 80; 292 NW2d 167 (1980) reversed.

100 Mich App 406; 299 NW2d 56 (1980) reversed.

OPINION OF THE COURT

1. ARREST — SEARCHES AND SEIZURES — WITHOUT A WARRANT — EXIGENT CIRCUMSTANCES.

The arrest of a person in his home without a warrant and a search incident to the arrest are not justified absent exigent circumstances.

2. ARREST — SEARCHES AND SEIZURES — WITHOUT A WARRANT — EXIGENT CIRCUMSTANCES.

The essence of the exigency which would excuse failure to obtain a warrant for arrest is the existence of circumstances known to the police which prevent them from taking time to obtain a warrant because to do so would thwart the arrest.

3. ARREST — SEARCHES AND SEIZURES — WITHOUT A WARRANT — EXIGENT CIRCUMSTANCES.

Failure of police officers to obtain arrest and search warrants during a five-hour interval between obtaining a description of a suspect and his arrest in the absence of exigent circumstances rendered the arrest illegal and the evidence seized inadmissible.

4. ROBBERY — ARMED ROBBERY — WEAPONS.

To be convicted of armed robbery, a person must possess an article which in fact is a dangerous weapon or an article harmless of itself which is used in a manner to induce a reasonable belief that it is a dangerous weapon during the robbery; the focus is on the presence of the weapon or article, and it is not sufficient that the victim thought or feared that the defendant was armed (MCL 750.529; MSA 28.797).

5. ROBBERY — ARMED ROBBERY — JURY INSTRUCTIONS.

An instruction to a jury that a defendant could be convicted of armed robbery where the victim had only a reasonable belief that the defendant was armed with a dangerous weapon at the time of the robbery without stressing the need of the presence of an actual weapon or article believed to be a weapon was error (MCL 750.529; MSA 28.797).

6. CRIMINAL LAW — EFFECTIVE ASSISTANCE OF COUNSEL — ARMED ROBBERY.

Introduction by defense counsel of evidence of the defendant's prior conviction of assault with intent to rob, not being armed, as a trial tactic did not amount to ineffective assistance of counsel in a prosecution of armed robbery (MCL 750.529; MSA 28.797).

7. CRIMINAL LAW — JURORS — COMPULSORY ATTENDANCE — PREJUDICE.

Compulsion of attendance of a juror at a trial by the court after determining that her claimed illness was not so serious as to justify her absence did not warrant the assumption that the defendant was prejudiced, absent a basis on the record for such an assumption.

CONCURRING OPINION BY RYAN, J.

8. SEARCHES AND SEIZURES — WITHOUT A WARRANT — HARMLESS
    ERROR.
    *The introduction of evidence of money seized during the search of
    a defendant incident to his arrest without a warrant was not
    harmless beyond a reasonable doubt where the jury learned
    that the money was exactly the amount which the victim
    claimed to have been stolen.*

*Frank J. Kelley,* Attorney General, *Louis J.
Caruso,* Solicitor General, *William L. Cahalan,*
Prosecuting Attorney, *Edward Reilly Wilson,* Dep-
uty Chief, Civil and Appeals, and *A. George Best,
II,* Assistant Prosecuting Attorney, for the people.

State Appellate Defender (by *Mardi Crawford)*
for the defendant.

KAVANAGH, J. *(for reversal).* This is an appeal
from an affirmance of defendant's conviction of
armed robbery and first-degree criminal sexual
conduct.

We reverse and remand for a new trial.

Complainant testified that someone sprayed a
substance into her face as she was getting out of
her car in a Detroit parking lot. Her assailant told
her that he would stab her with a knife if she did
not keep quiet. A struggle ensued in the car, and
the assailant took $12 from her wallet. He then
directed her to drive from the scene, and they
stopped at a deserted location. After a further
struggle, during which she was able to scratch her
assailant's face, the assailant engaged in forcible
sexual intercourse with complainant and fled.
Shortly thereafter complainant was able to sum-
mon police and describe her assailant to them. The
police located a wallet in her car which contained

several pieces of identification belonging to the defendant.

The crime occurred during the late evening of February 22, 1978. On the basis of information in the wallet, police located defendant about 2:45 a.m. on February 23. He matched the description of the assailant given by complainant, and he had a laceration under his right eye. He was placed under arrest, and $12 found in the right breast pocket of his jacket and a nailfile in his right rear pants pocket were seized.

The defendant testified that he had met complainant when her car had become stuck in the snow. He assisted in extricating the car, and a lengthy conversation ensued in which complainant told him that she was having marital difficulties and was "tired of old men". She agreed to drive him to a bar, but on the way they stopped at a deserted location and engaged in consensual sexual intercourse. When he told her that she "stunk", a fight ensued, and he left her.

On appeal, the defendant asserts four errors:

## I. ARREST WITHOUT A WARRANT AND ATTENDANT SEARCH AND SEIZURE

A pretrial hearing was held on the legality of the defendant's arrest (with the resulting seizure of articles to be suppressed, if the defendant were successful). The police had no arrest or search warrants. After checking one address for the defendant that was incorrect, the police located him at 271 Watson at about 2:45 a.m. The owner of the building opened the defendant's apartment. The police saw someone sleeping in the bed in the one-room apartment, and the owner identified the person as the defendant. The police awakened the

defendant at gunpoint and determined that he had no weapon. Since he generally fit the description of complainant's assailant, the police arrested him. A fingernail file, $12 in cash, and a black coat were taken and later admitted at trial. Statements made by the defendant to the police after his arrest were used to impeach him at trial.

The parties agree that the arrest of defendant without a warrant in his abode was illegal unless the circumstances surrounding it were exigent. *Payton v New York,* 445 US 573, 589; 100 S Ct 1371; 63 L Ed 2d 639 (1980), citing *United States v Reed,* 572 F2d 412, 423 (CA 2, 1978). The essence of the exigency which would excuse the failure to obtain a warrant is the existence of circumstances known to the police which prevent them from taking the time to obtain a warrant because to do so would thwart the arrest. *Commonwealth v Huffman,* 385 Mass 122, —; 430 NE2d 1190, 1192 (1982); Latzer, *Police Entries to Arrest—Payton v New York,* 17 Crim L B 156, 163 (1981).

The prosecutor contends that there were exigent circumstances present at the time the officers effectuated the arrest of defendant after having entered his room without a warrant. In support of this contention, the prosecutor recites the following facts: defendant was believed to be armed with a dangerous weapon, defendant was likely to escape, and a violent crime had been committed. However, we conclude that the facts do not support a finding of such exigent circumstances as would obviate the need for an arrest warrant.

In *Niro v United States,* 388 F2d 535, 540 (CA 1, 1968), the first circuit held that although failure to obtain a readily available warrant is not necessarily fatal to a search or seizure made concurrent with a fully anticipated arrest, it is fatal where

there are no countervailing factors. The *Niro* Court stated:

"Proceeding without a warrant is not to be justified, as the government suggests here, by the fact that by the time the officers act, dispatch is necessary to avoid flight or injury to person or property. Haste does not become necessary in the present sense if the need for it has been brought about by deliberate and unreasonable delay. This would allow the exception to swallow the principle."

In *United States v Houle,* 603 F2d 1297 (CA 8, 1979), the police received a complaint that the defendant had made threats after he had been drinking to shoot people. Upon their arrival at the scene, at 1:50 a.m., the officers heard two shots from the defendant's house. The police dispatcher received a phone call from the defendant threatening to shoot any officer who came into his yard and demanding that the officers leave the area or return in the morning. The police delayed acting until 6:40 a.m., and then went to the defendant's house to arrest him. When they arrived they saw through a broken window that the defendant was sleeping on a bed. One of the officers saw a rifle and reached in through the window and seized it, whereupon the other officers kicked down the door and arrested the defendant. The police had made no attempt during the intervening four hours to obtain an arrest warrant.

The *Houle* Court, in an opinion antecedent to *Payton,* held that the Fourth Amendment did not sanction entries into a home without a warrant for the purpose of an arrest absent exigent circumstances. In rejecting the prosecution's claim that exigent circumstances existed, the Court stated:

"This is not a case involving hot pursuit. The officers' deliberate four hour delay from 1:50 a.m. to 6:30 a.m., indicates that the officers had no reason to believe, and did not believe, that the defendant would attempt to escape or destroy the evidence in his possession. It is undisputed that the officers made no attempt to obtain a search or arrest warrant during that period of delay. Any exigency that arose by virtue of the presence of the rifle near the bed could have been anticipated by the officers and does not excuse their earlier failure to obtain a warrant." 603 F2d 1300.

In the case at bar, there was over a five-hour delay between the time the police were given a physical description of the complainant's assailant and when they arrested defendant without a warrant. The prosecution has offered no explanation whatsoever as to why a warrant was not sought during this interval. Inasmuch as the prosecutor has not proffered any countervailing circumstances which justify the failure to secure a warrant, we hold that the police did not act reasonably in entering defendant's room without a warrant, arresting him, and seizing evidence. Therefore, defendant's motion to suppress the evidence seized as a result of the entry without a warrant should have been granted.

## II. SUFFICIENCY OF THE EVIDENCE THAT DEFENDANT WAS ARMED WITH A DANGEROUS WEAPON

Before its codification in 1931, the armed robbery statute provided:

"Sec. 15. If any person shall assault another, and shall feloniously rob, steal and take from his person any money or other property, or shall feloniously assault another with intent to rob or steal any money or other property, which may be the subject of larceny,

such robber being armed with a dangerous weapon, or any article used or fashioned in a manner to lead the person so assaulted to reasonably believe it to be a dangerous weapon, with intent, if resisted, to kill or maim the person robbed or assaulted, or if, being so armed, he shall wound or strike the person robbed or assaulted, he shall be punished by imprisonment in the state prison for life or any number of years." 1927 PA 374; 1929 CL 16722.

Act 328 of the Public Acts of 1931 codified Michigan's criminal law. Robbery armed was treated in § 529 of the act and provided:

"Sec. 529. Robbery armed—Any person who shall assault another, and shall feloniously rob, steal and take from his person, or in his presence, any money or other property, which may be the subject of larceny, such robber being armed with a dangerous weapon, or any article used or fashioned in a manner to lead the persons so assaulted to reasonably believe it to be a dangerous weapon, shall be guilty of a felony, punishable by imprisonment in the state prison for life or for any term of years."

The 1931 amendment thus eliminated the clause beginning with the words "with intent". We think it clear from that history that when enacted the words "dangerous weapon", etc., contemplated that the defendant would actually have a dangerous weapon; this is implicit in the phrase "with intent, if resisted, to kill or maim". The elimination of the "with intent" requirement reduced the prosecutor's burden of proof, but does not provide a basis for construing the section as no longer requiring that the defendant actually have a dangerous weapon or an article used or fashioned in a manner to lead the persons so assaulted to reasonably believe it to be a dangerous weapon.

It is not enough that the person assaulted is put in fear; a person who is subjected to an unarmed robbery may be put in fear.

To constitute armed robbery the robber must be armed with an article which is in fact a dangerous weapon—a gun, knife, bludgeon, etc., or some article harmless in itself, but used or fashioned in a manner to induce the reasonable belief that the article is a dangerous weapon.

Words or threats alone can never be dangerous weapons because the statute is concerned with weapons, not words.

To convict, the factfinder must make the determination that at the time of the robbery the assailant was in fact armed with something and not just that the victim thought he was armed. The determination must be based on the evidence.

Words or threats may be evidence of the fact of being armed and under some circumstances they alone might support a verdict of guilty. When no other evidence of the presence of the weapon is adduced, however, it is imperative that the instructions stress the focus of the jury on the presence of the weapon or article and not the fear or belief of the victim.

Unarmed robbery is a heinous felony, and the statute's 15-year maximum penalty shows how seriously the Legislature regards it. Michigan's ultimate punishment—life imprisonment—for armed robbery should not be cheapened by escalating a questionable charge to allow it.

In the case at bar, the only proper evidence that the assailant was armed with a dangerous weapon at the time of the assault was the complainant's testimony that the assailant "told me to shut up,

otherwise he would use his knife and stab me".[1]

Because this case must be remanded for a new trial we point out that although under proper instructions a jury verdict of guilty on this evidence would not be overturned, the instructions given here would not pass muster.

The instruction given, "Ladies and gentlemen, in order to fulfill the dangerous weapon element of the charge of robbery armed, it is not necessary that a weapon be introduced at trial, nor is it necessary for the complainant to see the weapon. All that is required is that the complainant have a reasonable belief that the defendant was armed with a dangerous weapon at the time of the incident, and for you to be convinced beyond a reasonable doubt of this belief", is patently in error.

Had this question been before us, we would have reversed on this issue, but because it was not we mention it only to obviate the problem on retrial.

What we have said about the armed element in the robbery statute has equal application to the first-degree criminal sexual conduct charge as brought herein. We note, however, that under a proper charge, inasmuch as unarmed robbery is also a felony, if that crime be proved, first-degree criminal sexual conduct under MCL 750.520b(1)(c); MSA 28.788(2)(1)(c) can be made out. *People v Willie Johnson,* 406 Mich 320; 279 NW2d 534 (1979).

### III. INEFFECTIVE ASSISTANCE OF COUNSEL

Before the defendant testified, outside the presence of the jury, the prosecutor informed the court

---

[1] Neither her testimony that "he said he should have pulled out his knife and stopped me" nor the finding of the fingernail file in his pocket several hours after the assault is any evidence that he was armed at the time of the attack.

that he understood that defense counsel intended to introduce evidence of defendant's prior conviction of the felony of assault with intent to rob, not being armed. MCL 750.88; MSA 28.283. He reminded the court that only if the court determined that the offense was one involving theft, dishonesty, or false statement, or was punishable by death or imprisonment for more than one year, and that its probative effect on the issue of credibility outweighed its prejudicial effect, could the court admit it. The judge acknowledged awareness of the rule and indicated that he would admit the evidence.

Defense counsel acknowledged that he intended to introduce the evidence on direct examination of the defendant and that he was agreeable to its admission.

The defendant testified about his conviction, and the prosecutor did not cross-examine him about it.

Defendant now argues that the failure of defense counsel to try to keep out any reference to his criminal record, let alone the volunteering of it, amounted to ineffective assistance of counsel. Because of the similarity of the offense to the present charge, defendant maintains, the probative value of the evidence was clearly outweighed by its prejudicial effect and its admission constituted error.

We are not persuaded. While we are not inclined to recommend this strategy on retrial, we are not prepared to hold it amounted to ineffective assistance of counsel.

IV. COMPELLING ATTENDANCE OF AN ILL JUROR

As the jury was to begin its second day of deliberations, one juror was not present, having

called in sick. Defense counsel objected to proceeding with 11 jurors. On the judge's instruction, the court clerk called the juror in the presence of the judge and the prosecutor but without the presence of defense counsel. The clerk reported that the juror responded that she had a sore neck and a cold brought on by the air conditioning. The judge decided that the juror was not too ill to come in, the juror was brought to the court in a police car, and deliberations resumed. When he learned of this, defense counsel objected to the failure to involve him in the process, but neither attempted to prove nor indeed did he claim any prejudice to the defendant on account of it.

While the unilateral procedure followed here leaves much to be desired, until we are persuaded that it resulted in denying defendant a fair trial, we will not reverse.

The question we must answer is whether there is any reasonable possibility that the defendant was prejudiced. A reasonable possibility of prejudice may not rest upon the bare assumption that the prosecutor or the judge engaged in some misconduct or that the police who transported the juror attempted to influence her. Without some basis on the record for such an assumption, it is unwarranted. To make that assumption, defense counsel, either during trial or at some other point, should have buttressed this issue by questioning the police officer who transported the juror or by inquiring of the juror herself once the verdict was returned. We have no idea whether the juror was so sick that her only thought was to end the deliberations as quickly as possible. On this record we do not find error on the claim which requires reversal.

Reversed and remanded.

WILLIAMS, C.J., and LEVIN and BRICKLEY, JJ., concurred with KAVANAGH, J.

RYAN, J. I concur in the Court's decision to reverse and remand for a new trial because I agree that the circumstances of the defendant's arrest did not excuse the warrant requirement of US Const, Am IV, and Const 1963, art 1, § 11.

Since the jury learned that the warrantless entry into the defendant's room resulted in the seizure of $12, the exact amount of money the victim claimed was stolen from her, I cannot conclude that the constitutional violation was harmless beyond a reasonable doubt. See *Chambers v Maroney,* 399 US 42; 90 S Ct 1975; 26 L Ed 2d 419 (1970), and *People v Robinson,* 386 Mich 551; 194 NW2d 709 (1972).

CAVANAGH and BOYLE, JJ., took no part in the decision of this case.