PEOPLE v JAMES BANKS

Docket No. 103593. Argued January 15, 1997 (Calendar No. 15). Decided
     June 3, 1997.

     James W. Banks was convicted by a jury in the Kent Circuit Court, H.
     David Soet, J., of aiding and abetting an armed robbery. The Court
     of Appeals, MACKENZIE and SMOLENSKI, JJ. (MURPHY, P.J., dissenting),
     affirmed in an unpublished opinion per curiam (Docket No.
     168213). The defendant appeals.

     In an opinion by Justice CAVANAGH, joined by Chief Justice
     MALLETT, and Justices BRICKLEY and KELLY, the Supreme Court *held*:

     The evidence adduced at trial in this case was legally insufficient
     to support the armed robbery conviction.

     1. To be convicted of armed robbery, the robber must have been
     armed with a dangerous weapon or some article, harmless in itself,
     that was used or fashioned in a manner to induce the reasonable
     belief that the article was a dangerous weapon. A subjective belief
     that a weapon exists is insufficient. Words or threats alone can
     never be dangerous weapons.

     2. In this case, the victim testified that she did not see any
     weapon or any article fashioned as a weapon. It was not threatened
     that she would be shot if she did not comply with the robbers'
     demand. There was no objective evidence that the defendant's
     accomplice was armed with a dangerous weapon or any article
     used or fashioned in a manner to lead the victim to reasonably
     believe that he had a dangerous weapon.

     Reversed and remanded.

     Justice RILEY, joined by Justices BOYLE and WEAVER, dissenting,
     stated that the evidence was sufficient to present to the jury the
     question whether the defendant was armed.

     While the armed element of armed robbery is not satisfied by
     proffering, without more, that the victim believed that the defend-
     ant was armed, the assailant's verbal threats that he would shoot
     the victim if he did not comply and the victim's observation of a
     bulge under his vest does not constitute the absolute minimum
     level of evidence sufficient to support an armed robbery convic-
     tion. Threats are not essential to sustain a conviction for armed
     robbery. The people merely need to present objective evidence that

a defendant possessed a dangerous weapon or article used or fashioned to look like one. The existence of some object, whether actually seen or obscured, is objective evidence that a defendant possesses a dangerous weapon or an article used or fashioned to look like one. Related threats, whether verbal or gesticulatory, further support the existence of a weapon or article.

In this case, the victim testified about some objective evidence. That testimony was sufficient to meet the minimum threshold requirement set forth in *People v Jolly*, 442 Mich 458 (1993), that there must be some objective evidence of the existence of a weapon or article before a jury will be permitted to assess the merits of an armed robbery charge. The matter was properly presented to the jury.

*Frank J. Kelley*, Attorney General, *Thomas L. Casey*, Solicitor General, *William A. Forsyth*, Prosecuting Attorney, and *Timothy K. McMorrow*, Chief Appellate Attorney, for the people.

State Appellate Defender (by *Richard B. Ginsberg*) for the defendant.

CAVANAGH, J. The issue presented in this case is whether there was sufficient evidence to support defendant's conviction for armed robbery.[1] The specific legal question, however, that we are required to address yet again is: What is the nature and quantum of evidence that satisfies the "armed" component of armed robbery?

---

[1] MCL 750.529; MSA 28.797. This statutory section provides, in relevant part:

Any person who shall assault another, and shall feloniously rob, steal and take from his person, or in his presence, any money or other property, which may be the subject of larceny, such robber being armed with a dangerous weapon, or any article used or fashioned in a manner to lead the person so assaulted to reasonably believe it to be a dangerous weapon, shall be guilty of a felony, punishable by imprisonment in the state prison for life or for any term of years.

I

The relevant testimony at trial was provided by Jennifer Lusk, who was working at the Dairy Mart store that defendant and another man, Hubbard Hudson, were convicted of robbing.[2] On March 22, 1993, at approximately 1 A.M., defendant and Hudson entered the Dairy Mart store, Hudson looked at the cash register, and then both men left. Approximately fifteen minutes later, they returned and again left without doing anything. After another fifteen-minute interval, the two men entered the store yet again, but this time defendant approached the front of the counter and Hudson positioned himself at the side of the counter. Lusk testified that Hudson had his left hand in the "slash pocket" of his jacket and said to her, "You are going to be robbed." When asked what Hudson did with his hand while it was in his pocket, Lusk said that he "Just kind of moved it around a little bit." Lusk never saw a weapon or any other article being fashioned as a weapon, but she followed Hudson's orders that she dump the contents of the cash register onto the counter. Defendant scooped up the money off the counter while Hudson went behind the counter and, with the same hand he had had in his pocket, took some lottery tickets, but Lusk still saw no weapon or any other article. Both men then left the store.

After trial, the jury found defendant guilty of aiding and abetting an armed robbery. In a split decision, the Court of Appeals affirmed defendant's conviction. We granted leave, 451 Mich 917 (1996), and now reverse.

---

. [2] The defendant in the instant case was actually convicted of aiding and abetting an armed robbery.

II

In *People v Saenz*, 411 Mich 454, 458; 307 NW2d 675 (1981), this Court unanimously reversed a conviction for armed robbery, summarizing the relevant evidence as follows: "[T]he victim's testimony . . . was that he thought the defendant had a weapon of some kind; he saw no article which resembled a weapon; he saw no bulge under defendant's coat nor his hand shaped to look like a weapon." This Court noted the prosecutor's argument "that the victim believed the defendant had a weapon and that this was a reasonable belief under the circumstances," but dismissed this argument, noting that it "addresses only one consideration and ignores the requirement that the belief must be induced by the use or fashion of 'any article' with which the assailant is armed." *Id.* at 457-458. This Court then noted that there was no testimony that the defendant "used his hand and a covering so as to resemble a gun" and, accordingly, concluded that the victim's testimony "cannot be the basis for an armed robbery conviction." *Id.* at 458. The underlying principle is that a subjective belief that a weapon exists is insufficient to satisfy the armed robbery statute.

In *People v Parker*, 417 Mich 556, 565; 339 NW2d 455 (1983), this Court further explicated the requirements for an armed robbery conviction:[3]

> It is not enough that the person assaulted is put in fear; a person who is subjected to an unarmed robbery may be put in fear.

---

[3] Relative to the charge of armed robbery, the *Parker* Court considered the propriety of the jury instructions in that case, which were found to be "patently in error." *Id.* at 566. The jury instructions are not at issue in the case at bar.

To constitute armed robbery the robber must be armed with an article which is in fact a dangerous weapon—a gun, knife, bludgeon, etc., or some article harmless in itself, but used or fashioned in a manner to induce the reasonable belief that the article is a dangerous weapon.

Words or threats alone can never be dangerous weapons because the statute is concerned with weapons, not words.

To convict, the factfinder must make the determination that at the time of the robbery the assailant was in fact armed with something and not just that the victim thought he was armed. The determination must be based on the evidence.

Words or threats may be evidence of the fact of being armed and under some circumstances they alone might support a verdict of guilty. When no other evidence of the presence of the weapon is adduced, however, it is imperative that the instructions stress the focus of the jury on the presence of the weapon or article and not the fear or belief of the victim.

In *People v Jolly*, 442 Mich 458; 502 NW2d 177 (1993), the victim was working in a restaurant around midnight when "a man [defendant Jolly] and a woman entered the restaurant. After ordering some food from [the victim], the woman handed him a paper bag and told him her companion had a gun and would shoot him unless he filled the bag with money. [The victim] never saw a gun, and the male robber's hands were in view at all times; however, he did as the woman asked." *Id.* at 461.

At trial, the prosecutor asked the victim what, other than the woman's assertion, made him think that the male robber had a gun. The following exchange then took place:

[*The Victim*]: [S]he said, "He has a gun."

[*Prosecutor*]: Okay. Was there anything else that made you believe or think about a gun, in your mind?

*A.* Not really. Normally when, you know, somebody says they have a gun, I just, you know, I just thought that he had a gun.

*Q.* Okay. Was there anything that made you think that, though, any more?

\*          \*          \*

*A.* Well, there was like when he came in he was standing right in front of me. I saw a bulge in his mid, mid area of his—he had a vest on, I saw a bulge. I didn't know if it was a gun or not. She said that he had a gun and I assumed because there was a bulge it could have been a buckle or anything, and I didn't know. So I just went by what she said and just did what she asked. [*Id.* at 462-463.]

In *Jolly,* the precise legal question presented was whether there was sufficient evidence to submit the issue of armed robbery to the jury. The *Jolly* majority quoted the excerpt from *Parker,* and drew the following conclusions:

A fair reading of *Parker* does not require submission of a dangerous weapon or other article into evidence, nor does it require that a witness see the make or model number of a gun or knife before the issue can be submitted to the jury. *What cannot reach the jury is proof that only focuses on the subjective belief of the victim.* In other words, there must be some objective evidence of the existence of a weapon or article before a jury will be permitted to assess the merits of an armed robbery charge. For example, an object pointing out from under a coat, together with statements threatening a victim with being shot, clearly satisfies the statutory definition of armed robbery. In such a case, there is evidence of actual possession of a weapon or article and the testimony regarding statements that, if believed, make clear an intent to convince the victim of the existence of such a weapon or article. The facts in *Parker* indicate that the victim never saw anything that could have been the

> knife with which she was being threatened. [442 Mich 468-
> 469 (emphasis added).]

It must be kept in mind that the last sentence applies with equal force to the case at bar. And it must be further emphasized in the instant case that there was no verbal threat relating to a weapon of any kind.

In *Jolly*, the majority held that the woman robber's threat that the male robber would shoot the victim if he did not comply and the victim's observation of a bulge under the male robber's vest "located in a place where a handgun could conceivably be concealed," *id.* at 470, was sufficient circumstantial evidence to submit the armed robbery charge to the jury. We believe that this interpretation of the "evidence" constitutes the absolute minimum level of evidence sufficient to support an armed robbery conviction, and we hold that the evidence in the case at bar is well below this minimum level.

### III

In terms of evidentiary sufficiency, this case is virtually identical to *Saenz*. The victim testified that she thought defendant's accomplice had a weapon of some kind, but that she never saw any article that resembled the weapon, or a bulge under the accomplice's coat that conceivably could have been a weapon, or his hand shaped to look like a weapon. Furthermore, the victim did not testify that either defendant or his accomplice threatened that the victim would be shot or stabbed with any alleged weapon. The victim's testimony cannot be the basis for an armed robbery conviction.

On direct examination, the prosecutor elicited the following responses:

*Q.* What happens this time? What occurs?

*A.* The heavier-set one walks to the front of the counter, and the skinnier one comes to the side of the counter, and he had his hand in his—his left hand in his pocket, and he said, "You are going to be robbed."

\*          \*          \*

*Q.* And so the skinnier one walks in and said—he had his hand in his pocket?

*A.* He had his hand in his pocket like that, like straight in like that, I guess.

*Q.* Like this (indicating)?

*A.* But not up so high.

*Q.* Like that (indicating)?

*A.* Yeah.

*Q.* Did you ever see a weapon at any time?

*A.* No.

*Q.* What significance did that hand in the pocket have to you when he said you were going to be robbed?

*A.* Because he never took his hand out of that pocket the whole time I was getting the cash out.

*Q.* You didn't see a weapon, though?

*A.* No.

*Q.* But he said you were going to be robbed?

*A.* (Nodding head.)

*Q.* What happened then?

*A.* He told me to open the drawer, and it took me a few minutes to get the sequence to get the drawer to come out. And the drawer opened, and it came out, and he told me to grab—to get the drawer and set it up on the counter, the skinnier one.

*Q.* Who told you you were going to be robbed?

*A.* The skinny one.

*Q.* Who told you to open the drawer?

*A.* The skinny one.

*Q.* And who told you to take the drawer out?

*A.* The skinny one.

\*          \*          \*

*Q.* What happened then? What occurred then?

*A.* Then he was scooping the money up, and I kind of took a step back to get away from the register, because I didn't know what he was going to do, and the next thing I know is the skinnier one opened the side door and came back, and then, only then, his hand came out of that pocket, because then he started grabbing out the lottery tickets.

*Q.* Did he have a weapon in his hand when it came out?

*A.* No, didn't see one.

On cross-examination, the following exchange took place:

*Q.* When Mr. Banks was in this—well, let me withdraw that question and go back a little bit.

The third time these people come in, it was the tall, skinny one you said who had his hand in his pocket?

*A.* Correct.

*Q.* And that was in a pocket of a coat or jacket?

*A.* Yeah.

*Q.* And could you describe for the jury what kind of pockets were in this coat? In other words, were they pockets or were they more like a coat-type pocket that I have on my suit coat?

*A.* They were slashed pockets like you get on a flannel jacket, like a quilted flannel jacket with the pockets that go inside that farmers wear.

*Q.* So kind of hand-warmer pockets?

*A.* Yeah.

*Q.* Now, when did you first become aware of this person having his hand in his pocket?

*A.* When he walked up beside me. He was right—he was right next to me. I couldn't miss his hand in his pocket.

*Q.* All right. And the prior two occasions when he came in the store, did he ever have his hand in his pocket that you remember?

*A.* No. He didn't have his hands in his pocket.

*Q.* So he came up beside you, which would have been where, alongside where the door is here?

*A.* Yeah.

*Q.* Okay. And Mr. Banks would have been over here in front of the counter, right?

*A.* Mr. Banks was in front of me.

\*        \*        \*

*Q.* And it was—we later determined that it was—Mr. Hudson is the tall, skinny person we are talking about, right?

*A.* Okay. Right.

*Q.* And it was Mr. Hudson who was standing on the side with his hand in his pocket?

*A.* Side, left hand.

*Q.* What did he do with his hand in his pocket?

*A.* He said, "You are going to be robbed."

*Q.* All right. But did he do anything with his hand or with his jacket?

*A.* Just kind of moved it around a little bit. That's all.

*Q.* Well, maybe we can make this clear for the jury. When Mr. Bloemers was asking questions, he was going like this (indicating).

*A.* And I told him lower, not so high. Anybody who walks in with a gun is not going to raise it at you. It's lower.

*Q.* Do you recall, was this a jacket where it buttoned or zipped or somehow fastened across the front?

*A.* No. With the slashed pocket, all you have got to do is put your hand in it. If there is a weapon in it, you can't see it.

*Q.* Other than that, did he do anything, any motion or activity with his hand in his pocket?

*A.* Just kept moving whatever he had in his pocket around. I didn't ask. I wasn't about to ask.

*Q.* I understand that. But, for all you know, there was nothing in there but his hand?

*A.* Okay, yeah.

*Q.* Did Mr. Banks say anything?

*A.* No.

*Q.* Did he threaten you in any way?

*A.* No.

*Q.* Did he demand anything of you in any way?

*A.* No.

\*     \*     \*

*Q.* I just have one more thing to take up with you, Ms. Lusk. Again, I am referring back to the transcript on the preliminary examination that was held in this matter, and I am on page 6. Mr. Bloemers was asking you some questions at that time, and I believe he was talking about Mr. Hudson.

And in the middle of the page, Mr. Bloemers, he asks, "Where were his hands, if you recall?" Your answer, "He had his hand—he had his left hand in his pocket." Is that accurate? Do you remember that?

\*     \*     \*

Do you remember that testimony?

*A.* Yeah, the down here part?

*Q.* Yes.

*A.* The skinnier one kept his left hand in his pocket.

*Q.* Right. Now, let me go over it in just a little more detail so we get it right. You answered, "He had his left hand in his pocket." And Mr. Bloemers said, "Okay. And what was he doing with that left hand in his pocket? Was he just . . ." trailed off, and then you answered, "Just—just kept it there." "Okay. Could you see whether there was anything inside of that pocket?" Your answer was, "No." "Okay. Did he do any type of motions with that or non-motions with that, or did it—was it still, or just like this, or how?" I assume he was making some kind of gesture.

*A.* He just left his hand down.

*Q.* And then your answer was, "Just kept it in there"?

*A.* He just kept it in there.

*Q.* So basically Mr. Hudson, throughout this episode, at least up until the time that he grabbed the lottery tickets, merely kept his left hand in his pocket?

*A.* In his pocket.

*Q.* And he didn't really do anything else with it other than just placing it there, correct?

*A.* Correct.

*Q.* When you were aware of his hand in his pocket, that drew your attention to Mr. Hudson, didn't it?

*A.* Yes.

*Q.* And so you observed Mr. Hudson and continued to watch him?

*A.* Yes.

On redirect examination, the victim testified as follows:

*Q.* You also went further in that preliminary examination and answered some questions to the Court. Do you recall that, at the conclusion of it the Judge asked you some questions?

*A.* Yes.

*Q.* About the hand being in the pocket, is that correct?

*A.* Yes.

\*     \*     \*

*Q.* Do you recall what you told the Court about the hand in the pocket?

*A.* Yeah.

*Q.* What did that mean to you at the time when the Court asked you?

*A.* That he might have had a gun.

*Q.* You thought he was going to kill you, right?

*A.* Yes.

*Q.* Do you still feel that way from what you saw that day and the actions that he made?

*A.* Yes.

*Q.* You never did see the gun, though?

*A.* No.

The victim did not see any weapon, nor did she see any article fashioned as a weapon. It was not threatened that she would be shot if she did not comply with the robbers' demands. There was no objec-

tive evidence that defendant's accomplice was "armed with a dangerous weapon, or any article used or fashioned in a manner to lead the [victim] . . . to reasonably believe it to be a dangerous weapon . . . ." Accordingly, the evidence adduced at trial is legally insufficient to support an armed robbery conviction.

IV

We reverse the judgment of the Court of Appeals and remand to the trial court for resentencing on a conviction for unarmed robbery.

MALLETT, C.J., and BRICKLEY and KELLY, JJ., concurred with CAVANAGH, J.

RILEY, J. (*dissenting*). In the matter now before this Court, we are asked to determine, viewing the record as a whole and in a light most favorable to the people,[1] whether the evidence presented was sufficient to raise a question of fact for reasonable persons to draw differing conclusions with regard to whether defendant " 'fashioned [an article] in a manner to lead the person so assaulted to reasonably believe it to be a dangerous weapon.' " *People v Shipp*, 34 Mich App 67, 69; 190 NW2d 750 (1971), quoting *People v Jury*, 3 Mich App 427, 429; 142 NW2d 910 (1966). Considering the record in its entirety, I am persuaded that the evidence was sufficient to present to the jury the factual dispute regarding whether defendant was armed. In other words, I dissent because I believe that the victim testified about "some objective evidence"[2] regarding the existence of a weapon or an article

---

[1] See *People v Hampton*, 407 Mich 354; 285 NW2d 284 (1979).

[2] *People v Jolly*, 442 Mich 458, 468; 502 NW2d 177 (1993).

used or fashioned " 'in a manner to lead [her] to reasonably believe it to be a dangerous weapon.' " *Shipp, Jury, supra.* I also disagree that our decision in *People v Jolly,* 442 Mich 458, 468; 502 NW2d 177 (1993), "constitutes the absolute minimum level of evidence sufficient to support an armed robbery conviction . . . ." *Ante,* p 475.

I

Defendant contends that the announcing of a robbery does not constitute an illegal act which places another in reasonable fear of an immediate battery, i.e., the announcement itself does not equate to an assault. However, there was more than a mere announcement. Defendant and his accomplice were flanked on either side of the victim—with defendant in front of the victim and his accomplice at her side. For all practical purposes, the victim was cornered behind the counter. Codefendant proceeded to announce that she was being robbed. At the same time, codefendant had his hand in his pocket, moving it around in a circular motion. He then demanded that she open the cash register and set its drawer on the counter top. Codefendant had not removed his hand from his pocket. Rather, he moved it around and did not take it out while the victim followed his instructions in collecting the money. Codefendant removed his hand from his pocket only after the victim handed over the money.

Consequently, viewing the evidence in a light most favorable to the people, I conclude that any reasonable person in the victim's position could have concluded that failure to comply could have resulted in personal injury.

Notwithstanding, defendant asserts that the people failed to establish that defendant and his accomplice were armed as intended by the Legislature under MCL 750.529; MSA 28.797.

This Court's decision in *People v Saenz*, 411 Mich 454; 307 NW2d 675 (1981), is directly on point. In *Saenz*, this Court noted that the armed robbery statute requires that the robber be "armed with a dangerous weapon, or any article used or fashioned in a manner to lead the victim to reasonably believe it to be a dangerous weapon." *Id.* at 455-456. The *Saenz* Court recognized that "testimony that defendant used his hand and a covering so as to resemble a gun raises a factual question for the jury's consideration . . . ." *Id.* at 458. However, where the victim testifies "that he neither saw a bulge *or hand underneath the defendant's coat* nor was he told by the defendant that he had a weapon,"[3] this Court concluded that the victim's belief that the defendant was armed was completely subjective and, thus, unacceptable for consideration by the jury. The *Saenz* Court stated that pursuant to the plain language of the statute, it was not enough for the victim merely to believe that his assailant was armed.[4] Instead, that

---

[3] *Jolly, supra* at 469 (emphasis added).

[4] In *Jolly, supra* at 468, quoting *People v Parker*, 417 Mich 556, 565; 339 NW2d 455 (1983), this Court observed:

"Words or threats alone can never be dangerous weapons because the statute is concerned with weapons, not words.

"To convict, the factfinder must make the determination that at the time of the robbery the assailant was in fact armed with something and not just that the victim thought he was armed. The determination must be based on the evidence.

"*Words or threats may be evidence of the fact of being armed and under some circumstances they alone might support a verdict of guilty.* When no other evidence of the presence of the weapon is

belief had to have been induced by the use or fashion of "any article" with which the assailant was armed.[5]

In *Jolly, supra,* this Court revisited the issue what satisfies the armed element of armed robbery.

When questioned by the people regarding his conclusion that his assailant was armed, the victim in *Jolly* testified:

> Well, there was like when he came in he was standing right in front of me. I saw a bulge in his mid, mid area of his—he had a vest on, I saw a bulge. I didn't know if it was a gun or not. She said that he had a gun and I assumed because there was a bulge it could have been a buckle or anything, and I didn't know. [*Id.* at 463.]

On the basis of this testimony, we affirmed the defendant's armed robbery conviction because the existence of a bulge in the perpetrator's jacket "objectively supported submission." *Id.* at 471. However, we also expressly recognized the precedent set in *People v Parker,* 417 Mich 556; 339 NW2d 455 (1983), stating:

> A fair reading of *Parker* does not require submission of a dangerous weapon or other article into evidence, nor does it require that a witness see the make or model number of a gun or knife before the issue can be submitted to the jury. What cannot reach the jury is proof that only focuses on the subjective belief of the victim. In other words, *there must be some objective evidence of the existence of a weapon or article before a jury will be permitted to assess*

---

adduced, however, it is imperative that the instructions stress the focus of the jury on the presence of the weapon or article and not the fear or belief of the victim." [Citation omitted; emphasis added.]

[5] See also *People v Johnson,* 206 Mich App 122; 520 NW2d 672 (1994) (the defendant placed his hand in his "baggy" shirt while giving instruction to the victim to stop).

> *the merits of an armed robbery charge.* For example, an object pointing out from under a coat, together with statements threatening a victim with being shot, *clearly satisfies* the statutory definition of armed robbery. In such a case, there is evidence of actual possession of a weapon or article and the testimony regarding statements that, if believed, make clear an intent to convince the victim of the existence of such a weapon or article. The facts in *Parker* indicate that the victim never saw anything that could have been the knife with which she was being threatened. [*Jolly, supra* at 468-469 (emphasis added).]

I agree with the majority that the armed element of armed robbery is not satisfied by proffering, without more, that the victim believed that the defendant was armed. However, I disagree that the assailant's verbal threats that he "would shoot the victim if he did not comply and the victim's observation of a bulge under the male robber's vest . . . constitutes the absolute minimum level of evidence sufficient to support an armed robbery conviction . . . ." *Ante,* p 475. To the contrary, in *Jolly, supra* at 469-470, we noted:

> *The typical armed robbery case prosecuted under the feigned weapon method involves either* the use of a toy gun or a finger or other object hidden in a bag or under a coat to simulate the appearance of a weapon together with threatening behavior and statements indicating the existence of a weapon. The existence of some object, *whether actually seen or obscured by clothing* or something such as a paper bag, *is objective evidence that a defendant possesses a dangerous weapon or an article used or fashioned to look like one. Related threats, whether verbal or gesticulatory, further support the existence of a weapon or article.* [Emphasis added.]

On this basis, in the instant case, the people must demonstrate that codefendant did more than merely

keep his hands concealed. However, this Court has never held that the victim must have observed a "bulge" or that the assailant must have threatened to injure the victim if he did not comply. Instead, the people merely need to present "objective evidence that a defendant possesses a dangerous weapon or article used or fashioned to look like one." *Id.* Stated otherwise, the people must present proof of "[t]he existence of some object, whether actually seen or obscured by clothing . . . [that] simulate[s] the appearance of a weapon." *Id.* "Related threats, whether verbal or gesticulatory, *further* support the existence of a weapon or article." *Id.* (emphasis added). But, we have never ruled that threats are essential to sustain a conviction for armed robbery. The majority mischaracterizes the extent of the rule of law set forth in *Jolly, supra.* The majority takes our application of the law in *Jolly* and holds that this "constitutes the absolute minimum level of evidence sufficient to support an armed robbery conviction . . . ." *Ante,* p 475. *Jolly* does not stand for that proposition. In *Jolly,* we explicitly held that "[w]ords *or* threats *may* be evidence of the fact of being armed *and* under some circumstances *they alone might support a verdict of guilty.*" *Id.* at 468 (emphasis added).

Therefore, with this in mind, the dispositive question in this case is whether the victim testified regarding "some objective evidence of the existence of a weapon or article before [the] jury [could] be permitted to assess the merits of [the] armed robbery charge." *Id.*

II

On the basis of the record presented, I am persuaded that the victim testified about "some objective evidence." *Id.* On cross-examination, when asked whether codefendant did "anything with his hand or with his jacket,"[6] the victim answered that he "[j]ust kind of moved it around a little bit." *Ante*, p 478. Later, when defense counsel attempted to clarify his point regarding whether defendant did anything else, the victim responded that he "[j]ust kept moving whatever he had in his pocket around." *Id.*

The victim added that she did not ask what was in codefendant's pocket. *Id.* I note that she need not make such an inquiry. Under the armed robbery statute, the victim was not required to ask, or test for that matter, whether defendant was bluffing. The victim need only have been "lead" by defendant with respect to whatever may be in defendant's pocket so that she could have "reasonably believe[d] it to be a dangerous weapon." See MCL 750.529;   MSA 28.797. Furthermore, the victim answered a resounding "No!" when asked about "the prior two occasions when [defendant] came in the store [and whether] he ever ha[d] his hand in his pocket," making it even easier to conclude, viewing the "evidence in a light most favorable to the prosecution,"[7] that the victim reasonably believed that codefendant did not have good intentions when he came into the store a third time, "never [taking] his hand out of [his] pocket the whole

---

[6] *Ante*, p 478.

[7] *Ante*, p 477, *Jolly, supra* at 476 (BRICKLEY, J., dissenting), citing *Hampton*, n 1 *supra* at 368.

time [the victim] was getting the cash out"[8] of the register.

Because of "what [the victim] saw that day *and the actions that he made*,"[9] I find that the record evidences that the victim's testimony was sufficient to meet the minimum threshold requirement espoused by this Court in *Jolly, supra* at 468, i.e., that "there must be some objective evidence of the existence of a weapon or article before a jury will be permitted to assess the merits of an armed robbery charge." As such, the matter was properly presented to the jury.

BOYLE and WEAVER, JJ., concurred with RILEY, J.

---

[8] *Ante*, p 476.

[9] *Id.*, p 480 (emphasis added).