# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

AQUARIUS DEVONTE JOHNSON,

        Defendant-Appellant.

UNPUBLISHED
August 22, 2017

No. 332043
Berrien Circuit Court
LC No. 2015-003423-FC

---

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

ANTHONY DEWAYNE ISOM,

        Defendant-Appellant.

No. 332296
Berrien Circuit Court
LC No. 2015-003422-FC

---

Before: BOONSTRA, P.J., and RONAYNE KRAUSE and SWARTZLE, JJ.

PER CURIAM.

In this consolidated appeal, defendants independently appeal by right their convictions arising out of an armed robbery, and in Docket No. 332043, defendant Johnson also appeals by right his sentences. Both defendants were convicted of armed robbery, MCL 750.529. Defendant Johnson was also convicted of carrying or possessing a firearm during the commission of a felony (felony-firearm), MCL 750.227b, and carrying or possessing a firearm while ineligible to do so (felon-in-possession), MCL 750.224f; and defendant Isom was also convicted of possession of less than 25 grams of cocaine, MCL 333.7403(2)(v). The trial court sentenced Johnson as a second-offense habitual offender, MCL 769.10, to 13 to 30 years in prison for armed robbery conviction, 28 months to 90 months in prison for felon-in-possession, and to two years in prison for his felony-firearm conviction. The trial court sentenced Isom to serve concurrent terms of 6 to 15 years in prison for armed robbery conviction and 216 days in jail for possession of cocaine. Neither defendant challenges the occurrence of the robbery, but both argue that there was insufficient evidence that they were involved and that they were denied fair trials by joining their charges for a single trial. Johnson also argues that there were various

-1-

other errors that warrant a new trial or, at the least, require resentencing. We affirm in both dockets.

The robbery occurred on the morning of July 28, 2015. The victim, who testified through a Spanish language interpreter, walked from her place of employment, a charter school, to a nearby gas station to purchase lunch. While walking back from the gas station, she noticed two people running up behind her. She did not know why they were running, but when they got close to her one of them said, "She, she," and then, "Get it. Get it." One grabbed her from behind and the other put a pistol to her chest. The man who held the pistol to her chest grabbed her bag from the store and threw the things on the ground. The bag had the items she bought from the store and her wallet in it. She had her "papers and $20" in her wallet. The man with the pistol took her wallet from the bag and then both men ran in the direction of the charter school; then they ran off together in the direction of an apartment complex behind the school. The victim returned to the school and contacted the police, who found the victim to be distraught and to have urinated on herself; she also had a welt on her chest around her sternum.

The responding officer testified that the victim described both men as having "braid hair styles." The man with the gun wore a light colored shirt and jeans and had something black on his shoulder; and the other was skinnier and wore a dark shirt and dark pants. He testified that the victim described the men as being between 5'6" and 5'10" in height, although his report indicated that she had described them as being from 5'10" to 5'11" in height. She also told him that she had earlier seen the men at the gas station where she purchased her food. The victim testified that she had noticed the two men who robbed her while she was in the store because the man with the gun had been next to her when she paid. The officer reviewed security footage from the gas station and identified two men in the video who matched the victim's description of the perpetrators.

Defendants were detained at the apartment complex an hour and a half to two hours after the robbery. Officers identified them as the men in the gas station security footage; however, they were not wearing the same clothing. Isom had an apartment in the complex, which officers searched with his permission. They found a blue bag, .38 caliber bullets, a gun lock, and a "corner baggie" containing a substance that tested positive for cocaine. Neither a firearm nor the victim's money or effects were ever recovered. Johnson admitted to officers that he had stayed the night at Isom's apartment; in an interview with police, he denied having gone to the gas station, but later admitted that he, in fact, had gone there after he was shown a picture from the security video.

We review a challenge to the sufficiency of the evidence de novo to determine whether the evidence, when viewed in the light most favorable to the prosecution, could permit a rational trier of fact to find the essential elements of the charged offense proved beyond a reasonable doubt. *People v Roper*, 286 Mich App 77, 83; 777 NW2d 483 (2009); see also See *People v Wolfe*, 440 Mich 508, 513-514; 489 NW2d 748 (1992), amended 441 Mich 1201 (1992). As noted, defendants only argue that they did not participate in the robbery, not that the robbery did not occur. Identity is an element of every offense. *People v Yost*, 278 Mich App 341, 356; 749 NW2d 753 (2008). The prosecution may prove identity through direct or circumstantial evidence. *People v Kern*, 6 Mich App 406, 409-410; 149 NW2d 216 (1967). This Court applies

the same standard of review to a trial court's decision to deny a motion for a directed verdict. *People v Gillis*, 474 Mich 105, 113; 712 NW2d 419 (2006).

At trial, the victim positively identified Johnson as the man who held the gun to her chest, which was sufficient by itself to support the identity element. See *People v Davis*, 241 Mich App 697, 700; 617 NW2d 381 (2000). Johnson challenges her credibility, but we do not interfere with the jury's role in evaluating a witness's credibility, even if the witness's testimony is vague or inconsistent. *People v Mehall*, 454 Mich 1, 6; 557 NW2d 110 (1997); see also *Wolfe*, 440 Mich at 514-515. We may only disregard testimony when it has been deprived of all probative value or is such that a rational jury could not believe it. *People v Lemmon*, 456 Mich 625, 645-646; 576 NW2d 129 (1998).

The victim described the robbers as having braided hair. Johnson and Isom both had braided hair. She described the man in white, Johnson, as being chunkier and dark-skinned. Both of those descriptions are relative and are influenced by the conditions attending the witness's observation, such as clothing and lighting, and involve some level of subjectivity. A reasonable jury could conclude that her description of Johnson was accurate under the totality of the circumstances. There was also some testimony that the victim described one of the robbers as being shorter—5'3"—but there was also testimony that she stated that they were approximately 5'10" in height. She also indicated that the man who held her arms wore black, whereas Isom was wearing blue in the videos. The variations in her statements and any discrepancies between her original description and the video evidence were not so significant that this Court would be justified in disregarding her testimony and were certainly all presented to the jury.

The victim admitted that she did not see the face of the man who grabbed her from behind, and she was unable to pick anybody out of a six-person lineup she viewed after the robbery. However, she also testified that the men who robbed her were the same men she saw at the store. An officer testified that she told him that same thing when he responded to the call about a robbery just minutes after the event. She described the men and, although there were some discrepancies, Johnson and Isom's appearance matched her description. The victim testified that the men ran off toward the River Terrace Apartments after the robbery, and an officer testified that Johnson and Isom were arrested at the apartments about an hour and a half to two hours later. There was ample evidence that Isom was at the store when the victim was present making her purchases, apparently arriving at the same time as Johnson and exchanging a look with Johnson as they left. Additionally, the evidence indicates that she had some opportunity to observe the man as he ran up to her and ran away, at least sufficient to match general characteristics with that of a person at the gas station notwithstanding misidentifying blue clothing as black. Defendants' change of clothing shortly after their presence at the gas station and after the robbery might have an innocent explanation, but a rational jury could also reasonably infer that they did so for the purpose of evading arrest by altering their appearances. See *People v Kowalski*, 489 Mich 488, 509 n 37; 803 NW2d 200 (2011). The jury could also consider the incongruity of possessing ammunition and a gun lock without a gun as circumstantially supporting a finding of guilt.

As noted, defendants do not challenge the occurrence of the armed robbery, only the identity of the perpetrators. We conclude that adequate evidence was presented for a rational

trier of fact to find beyond a reasonable doubt that defendants were the two men who committed the armed robbery. *Roper*, 286 Mich App at 83; *Kern*, 6 Mich App at 409-410. Accordingly, the trial court did not err when it denied Isom's motion for a directed verdict. *Gillis*, 474 Mich at 113.

Johnson additionally argues that the prosecution failed to present sufficient evidence to allow a rational jury to find beyond a reasonable doubt that an actual firearm was involved in the robbery. Felony-firearm and felon-in-possession both require a real firearm, defined as "any weapon which will, is designed to, or may readily be converted to expel a projectile by action of an explosive." MCL 750.222(e). The firearm need not be operable, but it must, in relevant part, have been intended or capable of expelling a projectile by action of an explosive. See *People v Humphrey*, 312 Mich App 309, 318-319 n 4; 877 NW2d 770 (2015); *Roper*, 286 Mich App at 83. Johnson points out that the victim admitted to having no knowledge about guns, and argues that no independent evidence suggested that the gun used was not, say, a BB gun, cap pistol, airsoft pistol, or inert replica. However, the nature of a weapon can be established through a victim's testimony alone. *People v Hayden*, 132 Mich App 273, 296; 348 NW2d 672 (1984); see also, e.g., *People v Davis*, 216 Mich App 47, 53-54; 549 NW2d 1 (1996). Her lack of knowledge of guns affects the weight of her testimony, but not its relevance. See *People v Way*, 303 Mich 303, 306; 6 NW2d 523 (1942).

The evidence clearly indicates that the victim believed the gun to be a "real" firearm. See MCL 750.222(e). Significantly, there was ample evidence that Johnson had access to a "real" firearm. As noted, possession of ammunition and a gun lock are incongruous in the absence of a gun. As such, a reasonable jury could infer that there was an actual firearm in Isom's apartment at some point. The testimony and evidence that Johnson was with Isom during the events at issue and that he admitted to spending the previous night at Isom's apartment permitted an inference that he had access to that weapon. The jury could also infer that the officers did not find the weapon to which the lock and ammunition belonged because Johnson and Isom hid or disposed of it after the robbery. See *People v Hardiman*, 466 Mich 417, 428; 646 NW2d 158 (2002) (stating that circumstantial evidence may give rise to multiple inferences and those inferences may even give rise to further inferences). Accordingly, there was testimony and circumstantial evidence that would permit a rational jury to find beyond a reasonable doubt that Johnson possessed a firearm during the commission of the robbery, see *Roper*, 286 Mich App at 83, which satisfied the firearm element of both felony-firearm and felon-in-possession. See MCL 750.227b(1); MCL 750.224f(1).

Because there was sufficient evidence to establish Johnson's identity as one of the perpetrators and to establish that he carried or possessed a firearm, the trial court did not err when it denied Johnson's motion for a directed verdict on these grounds. *Gillis*, 474 Mich at 113.

Defendants both also argue that the trial court erred in granting the prosecution's motion to consolidate their charges for a single trial. We review the trial court's ultimate decision whether to join or sever multiple defendants' trials for an abuse of discretion. *People v Hana*, 447 Mich 325, 346; 524 NW2d 682 (1994). We review de novo any underlying interpretation of the law or court rules, and we review for clear error any underlying factual determinations. *People v Williams*, 483 Mich 226, 231; 769 NW2d 605 (2009). A trial court necessarily abuses

its discretion when it premises its decision on an error of law. *People v Waterstone*, 296 Mich App 121, 132; 818 NW2d 432 (2012). However, even if the trial court erred, it would not be grounds for reversal unless "it affirmatively appears that it is more probable than not that the error was outcome determinative." *Williams*, 483 Mich at 243-244.

As an initial matter, the trial court clearly was not permitted to join Isom's cocaine possession charge with Johnson's trial under MCR 6.121(A). Under MCR 6.121(A)(1), defendants were not both charged with that offense. Under MCR 6.121(A)(2), Isom's cocaine charge was based on a purely incidental discovery totally unrelated to the acts involved in the robbery or firearms charges, so there is no basis to conclude that it was "related." See, e.g., *People v Beets*, 105 Mich App 350, 353; 306 NW2d 508 (1981). However, although the evidence of the cocaine was irrelevant to any of Johnson's charges and thus inadmissible against him, see MRE 401 and 402, it was not in fact admitted against him, and any minimal prejudice it might have caused could have been cured by an instruction to the jury. See *People v Pinkney*, 316 Mich App 450, 476-477; 891 NW2d 891 (2016). We are unable to discern how joinder of the cocaine charge could even possibly have prejudiced Isom on that charge. This error was clearly harmless.

Otherwise, the remaining offenses are obviously related and we find the trial court clearly was empowered to join the trials. Defendants nevertheless argue that they were prejudiced such that the trial court's decision was an abuse of discretion. We disagree.

Johnson argues that the consolidation undermined the evidence that the victim was unable to pick him out of a lineup, and the jury might have conflated him with Isom and thereby ignored the evidence that the victim could not identify him. Conversely, Isom argues that the identification evidence against Johnson was stronger and would mostly not have been admissible against him at a solo trial, and Johnson's prior conviction also likely prejudiced him. We disagree with both defendants.

Both defendants appeared in the video taken from the gas station. Both defendants were described as participating in the robbery. Both were arrested at the same apartment complex after both having changed their clothing. There was testimony that they shared an apartment together the prior night. We find that they were so closely linked to each other and to the robbery at so many points that any testimony and evidence tending to identify either of them would have tended to make it more probable that the other was involved in the robbery, and thus inexorably would have been relevant and admissible against the other, irrespective of whether they were codefendants. Thus, the identification testimony actually adduced at their consolidated trial would have been the same had they been tried separately. The consolidated trial did not undermine either defendant's ability to challenge identification evidence.

Johnson further fails to explain how the presentation of that evidence undermined the evidence that the victim could not pick him out from a lineup. The evidence that the victim was unable to see the man who grabbed her from behind during the commission of the robbery and yet still identified that man as one of the men she saw in the gas station supported Johnson's argument that her identification of him as the man with the gun might be mistaken. Stated another way, the weaknesses attending the victim's identification of Isom lent plausibility to Johnson's argument that her identification of him was also mistaken. Given Johnson's

admission that he spent the prior night at Isom's apartment, the gun lock and ammunition would also have been admissible against him in any event, because it tended to make it more probable that Johnson had a weapon and that the weapon was a firearm within the meaning of MCL 750.222(e). See MRE 401; MRE 402. Other than the evidence of the cocaine addressed above, neither party could have been prejudiced by the consolidation, so the trial court did not err in granting the consolidation or in sua sponte severing the trials.

Johnson next argues that the trial court violated the ex post facto clauses of the United States Constitution and the Michigan Constitution by applying the decision in *People v Lockridge*, 498 Mich 358; 870 NW2d 502 (2015), to his sentencing. This Court has already established that the retroactive application of the rule stated in *Lockridge* to a defendant's sentencing does not amount to an improper ex post facto law. See *People v Richards*, 315 Mich App 564, 587; 891 NW2d 911 (2016), appeal held in abeyance ___ Mich ___ (2017). The Court also recognized that the federal circuit courts have held that retroactive application of the remedy provided in *United States v Booker*, 543 US 220; 125 S Ct 738; 160 L Ed 2d 621 (2005), which our Supreme Court adopted for Michigan's sentencing scheme, does not amount to a violation of the prohibition against ex post facto laws. *Richards*, 315 Mich App at 587-588, citing *United States v Barton*, 455 F3d 649, 657 (CA 6, 2006). Accordingly, Johnson has not shown that the trial court violated the prohibition against ex post facto laws when it applied the remedy stated in *Lockridge* to his sentencing.

Nevertheless, even if they are now only advisory, trial courts must still properly score the guidelines and must consider them when sentencing a defendant. *Lockridge*, 483 Mich at 391, 392 n 28. Johnson argues that the trial court erred in scoring offense variable (OV) 4 and OV 14. "When calculating the sentencing guidelines, a court may consider all record evidence, including the contents of a [presentence investigation report or] PSIR, plea admissions, and testimony presented at a preliminary examination." *People v McChester*, 310 Mich App 354, 358; 873 NW2d 646 (2015). It may also consider a victim impact statement in a PSIR or other statement or letter submitted to the court for consideration on sentencing. See, e.g., *People v Earl*, 297 Mich App 104, 109-110; 822 NW2d 271 (2012). Further, the trial court may properly rely on inferences that arise from the record evidence when making the findings underlying its scoring of offense variables. *Id.* at 109.

Ten points should be scored under OV 4 if "[s]erious psychological injury requiring professional treatment occurred to a victim." MCL 777.34(1)(a). Evidence that a victim suffered "'personality changes, anger, fright, or feelings of being hurt, unsafe, or violated'" may support a trial court's finding that a psychological injury was serious and may require treatment. *People v Schrauben*, 314 Mich App 181, 182; 886 NW2d 173 (2016), quoting *People v Armstrong*, 305 Mich App 230, 247; 851 NW2d 856 (2014). Furthermore, the trial court may base its finding on its observation of a victim's demeanor at trial. *Id.*

The victim did not address the trial court at Johnson's sentencing. The prosecutor indicated that she was present, but stated that she was not "able to speak too much in front of the Court" because the events have "affected her—her nerves." The prosecutor represented that she wanted the court to "know beyond what her additional victim impact statement says, is [that] it—it affected her life so much, in her words." At that time, the trial court also had her victim impact statement. Although she indicated "N/A" under the section for emotional injury in that

statement, she also stated that she was "deathly afraid, when they grabbed me and put the gun to my chest." She said that she was "just beyond scared," she just "froze," and did not know what to do "besides scream for help." The prosecutor submitted another victim impact statement in which she provided additional details on the psychological harm she suffered. She related that she has been nervous and that her nerves now "get the worst of me." She said she always "makes sure of [her] surroundings," she was "scared of leaving the house," which makes it hard because she has a teenaged daughter. She stated that she also makes sure that someone comes with her when she goes out and constantly looks around to make "sure no one is going to hurt me." This evidence was adequate to establish by a preponderance of the evidence that the victim suffered a serious psychological injury. *People v Hardy*, 494 Mich 430, 438; 835 NW2d 340 (2013); *People v Bryant*, 491 Mich 575, 595; 822 NW2d 124 (2012). Therefore, it did not err when it assessed 10 points under OV 4. See MCL 777.34(1)(a).

Ten points should be scored under OV 14 if a defendant "was a leader in a multiple offender situation." See MCL 777.44(1)(a). The evidence at trial showed that Johnson positioned himself near the victim when she made her purchases, followed her as she left, apparently observed where she proceeded, returned to the gas station to apparently consult Isom, left the store with Isom, and held the gun. Johnson argues that the evidence could be construed in such a way that it would not suggest him to be the leader. That may be true, but it is not relevant that such a construction is *possible*. The evidence is sufficient to indicate that Johnson provided direction to Isom, held the firearm, and was the person who took the initiative to evaluate the victim for the robbery. There was adequate evidence to establish by a preponderance of the evidence that Johnson was the leader, irrespective of whether it might also be possible to look at the evidence in another way. *Hardy*, 494 Mich at 438. The trial court did not clearly err when it found that Johnson was the leader in a multiple offender situation and assessed 10 points under OV 14 on that basis. *Bryant*, 491 Mich at 595.

Johnson next argues that he received ineffective assistance of counsel at trial. We disagree. A claim of ineffective assistance of counsel requires a showing that counsel objectively performed below what prevailing professional norms would consider reasonable and that the outcome of the proceedings likely would have been different but for counsel's deficient performance. *People v Gioglio (On Remand)*, 296 Mich App 12, 21-22; 815 NW2d 589 (2012), vacated in part on other grounds, 493 Mich 864 (2012). Because no evidentiary hearing was held, our review is limited to mistakes apparent on the record. *Id*. at 20. Johnson argues that counsel had no legitimate strategic reason to ask the victim whether the perpetrator who had the gun was in the courtroom or for failing to object to the admission of the evidence that a gun lock, ammunition, and cocaine were found in Isom's apartment.

"The fact that the strategy chosen by defense counsel did not work does not constitute ineffective assistance of counsel." *People v Williams*, 240 Mich App 316, 332; 614 NW2d 647 (2000). We are required to presume that counsel had a sound strategic reason for any given conduct and entertain any reasonable explanation consistent with the evidence. *Gioglio*, 296 Mich App at 22-23. Johnson argues that counsel had already elicited testimony that the victim could not identify Johnson at a lineup and evidence that her descriptions of the robbers were not wholly consistent with Johnson's and Isom's actual appearances. Johnson's argument, in effect, is that counsel should have "quit while he was ahead." To the contrary, a reasonable attorney could have properly concluded that there was a significant probability that she would be unable

to identify Johnson at trial or, in the alternative, that she might indicate that Isom was the man with the gun. Either situation would benefit Johnson's defense of mistaken identity and might even be decisive at trial. Whether to risk the question under these circumstances was a matter of trial strategy. *People v Horn*, 279 Mich App 31, 39; 755 NW2d 212 (2008).

As already discussed, the evidence of the gun lock and ammunition would have been admissible against Johnson even if he had had a separate trial. Counsel cannot be faulted for failing to raise a futile objection or for failing to make a meritless argument. *People v Moorer*, 262 Mich App 64, 76; 683 NW2d 736 (2004). Although the evidence of the cocaine would have been inadmissible against Johnson in a separate trial, it was clearly admissible during the trial at issue. For that reason, Johnson's trial counsel had no obligation to object. *Id.* Moreover, a reasonable trial counsel in Johnson's lawyer's position could conclude that addressing the cocaine evidence or asking the trial court to provide a specific instruction on the evidence would bring unwanted attention to the drug evidence. Because the primary issue for Johnson's lawyer involved the identification evidence, he could reasonably choose not to discuss the cocaine evidence or object to its admission at trial. For the same reason, he could concentrate his opposition to the motion for joinder on the potential prejudice to his ability to challenge the identification evidence rather than on the minimal prejudice that might be caused by the admission of the cocaine evidence against Isom. Because there was a legitimate strategic reason for trial counsel's handling of the cocaine evidence, on this record, we cannot conclude that his failure to object or address the cocaine evidence fell below an objective standard of reasonableness under prevailing professional norms. *Gioglio*, 296 Mich App at 22-23.

Johnson failed to identify an act or omission by his trial counsel that fell below an objective standard of reasonableness under prevailing professional norms.

Johnson also raises several claims of error in a brief that he submitted on his own behalf under Administrative Order No. 2004-6, 471 Mich cii. He argues that the prosecutor engaged in misconduct by mentioning and presenting evidence that he had a prior felony conviction, by eliciting testimony about the victim's statements to investigating officers, by eliciting testimony about his own statements to officers, and by vouching for witnesses and mischaracterizing the evidence. He similarly argues that the trial court erred when it failed to prevent the erroneous admission of the testimony and evidence presented by the prosecutor. He similarly maintains that the trial court erred when it allowed the prosecutor to hold a corporeal lineup before trial and allowed the victim to identify him as a perpetrator of the robbery at trial. He also reiterates that the trial court erred in scoring his OVs at sentencing. Finally, Johnson again challenges whether his trial counsel provided effective assistance. We have carefully considered each of his additional claims of error and conclude that none have any merit.

Affirmed in both dockets.

/s/ Mark T. Boonstra
/s/ Amy Ronayne Krause
/s/ Brock A. Swartzle

-8-